527 A.2d 134

Phillip R. BRANDIMARTI, Appellant,

v.

CATERPILLAR TRACTOR CO. and Towmotor, Inc., Affiliated Corporations, and Beckwith Machinery Company.

Superior Court of Pennsylvania.

Argued Jan. 21, 1987.

Filed June 3, 1987.

28

Anthony P. Picadio, Pittsburgh, for appellant.

George Yokitis, Pittsburgh, for appellees.

Before BROSKY, DEL SOLE and CERCONE, JJ.

DEL SOLE, Judge:

The underlying action in the instant case was initiated by Appellant based upon a theory of strict liability. Appellant sought damages for the injuries he suffered when the forklift he was operating overturned. Named as defendants were the manufacturer of the forklift, Towmotor, Inc., Towmotor's parent company, Caterpillar Tractor Company, and the seller of the forklift, Beckwith Machinery Co. Appellant alleged that the forklift was defectively designed and came equipped with inadequate warnings. After testimony in the case was concluded, the trial court directed a verdict in favor of Caterpillar Tractor Company. The case was subsequently submitted to the jury which returned a verdict in favor of the remaining defendants. Appellant's

timely filed post-trial motions were denied by the court and this appeal ensued.

On appeal, Appellant seeks review of the court's charge to the jury, the court's ruling on several evidentiary matters and the court's directed verdict in favor of Caterpillar Tractor Company. For the reasons which follow, we find it necessary to rule that the jury was improperly charged and order a retrial. Because of our decision on the merits of this first issue, we decline to consider whether the court's evidentiary rulings were proper. We have, however, reviewed the court's action which directed a verdict in favor of Caterpillar Tractor Company and find it must also be reversed.

Appellant advances before this court a claim that the charge to the jury contained serious misstatements of the law. It is averred that the jury was instructed to balance social policy considerations which were inappropriate and that negligence, misuse, abuse and abnormal use concepts were erroneously included in the jury charge.[1]

The primary duty of a trial judge in charging the jury is to clarify the issues so that the jury may comprehend the questions that they are to decide. *Easton Nat. Bank & Trust Co. v. Union Nat. Bank & Trust Co. of Souderton,* 237 Pa.Super. 316, 352 A.2d 544 (1975). As long as the trial judge chooses a form of expression which adequately and clearly covers the subject, the judge is not required to use the exact language of a requested point. *McGowan v. Devonshire Hall Apartments,* 278 Pa.Super. 229, 420 A.2d 514 (1980). Where the accuracy of the charge is an issue on appeal, the appellate court must review it, not to determine whether certain portions taken out of context appear erroneous, but whether the charge in its entirety, against the background of the evidence in the particular case, demonstrated that error was committed which was

1. Appellant's claim that the jury charge improperly included state of the art concepts will not be considered on appeal since Appellant failed to specifically raise this claim before the trial court and in his motion for post-trial relief. Pa.R.C.P., Rule 227.1, 42 Pa.C.S.A. *Commonwealth v. Monarch,* 510 Pa. 138, 146–147, 507 A.2d 74, 78 (1986).

prejudicial to the complaining party. *Reilly by Reilly v. Southeastern Pennsylvania Transp. Authority,* 507 Pa. 204, 489 A.2d 1291 (1985). After review of the charge applying these standards, we conclude that the instructions given to the jury were, indeed, improper.

■ Although the trial judge began by correctly outlining for the jury the roles and duties imposed upon manufacturers in Pennsylvania, the following language was employed regarding whether a product should be found defective:

In making your determination of whether the lift truck was sold in a defective condition, you should consider the following factors:

The utility and benefits of the lift truck to the operator, plaintiff's employer and to the public in general as compared to the risks of injury, including the likelihood of injury and the seriousness of such injury;

The availability of a substitute product which would meet the same need and involve less risk, considering the effects that the substitute product would have on the user, plaintiff's employer and the public as a whole;

Tow Motor's ability to eliminate the alleged defect of the lift truck without impairing its usefulness, creating other risks of injury or making the lift truck too expensive to maintain its utility;

The operator's ability to avoid danger by the exercise of care in the use of the lift truck;

The operator's awareness of the dangers associated with the use of the lift truck, and their ability to know such dangers, because of the general public's knowledge of the dangers or the obviousness of such dangers, or the employer's ability to eliminate the dangers through training;

The mechanical feasibility of a different design and the economic consequences of a different design; and

The adverse consequences of, including safety hazards created by, a different design of the operator, the employer and the public generally.

Because of the aforementioned factors, you must perform a balancing test and determine whether the risk of injury, given the nature and extent of the probable injuries, is outweighted (sic) by the benefits obtained because of the lift truck to the operator, employers and the public in general.

Appellant, citing *Azzarello v. Black Brothers Company, Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978), maintains the court, by including the above language in the charge, incorrectly submitted social policy considerations to the jury to balance and improperly injected negligence concepts into a strict liability action. Appellees counter this claim by asserting "(t)he court in *Azzarello* was not called upon to decide by whom or the manner in which social policy is to be considered in a products liability trial". "Instead, the court in *Azzarello* was only asked to rule on whether the issue of defect in products liability should be defined by the phrase 'unreasonably dangerous'." Appellees' Brief at 14. Appellees reason that since the charge herein did not contain the words "unreasonably dangerous" and since it did not carry connotations of negligence, it was appropriate under Pennyslvania law. We do not subscribe to such a reading of *Azzarello* or to the charge in the instant case.

In *Azzarello* the Supreme Court was asked to consider whether it was proper to instruct the jury using the term "unreasonably dangerous" and the Court concluded that the jury should not be so instructed. The Court stated "even if we agree that the phrase 'unreasonably dangerous' serves a useful purpose in predicting liability in this area, it does not follow that this language should be used in framing the issues for the *jury's* consideration." *Id.*, 480 Pa. at 558, 391 A.2d at 1026. It continued:

"While a lay finder of fact is obviously competent in resolving a dispute as to the condition of a product, an entirely different question is presented where a decision as to whether that condition justifies placing liability upon the supplier must be made.

. . . . .

Should an ill-conceived design which exposes the user to the risk of harm entitle one injured by the product to recover? Should adequate warnings of the dangerous propensities of an article insulate one who suffers injuries from those propensities? When does the utility of a product outweigh the unavoidable danger it may pose? These are questions of law and their resolution depends upon social policy. Restated, the phrases 'defective condition' and 'unreasonably dangerous' as used in the Restatement formulation are terms of art invoked when strict liability is appropriate. It is a judicial function to decide whether, under plaintiff's averment of the facts, recovery would be justified; and only after this judicial determination is made is the cause submitted to the jury to determine whether the facts of the case support the averments of the complaint. They do not fall within the orbit of a factual dispute which is properly assigned to the jury for resolution."

*Id.*, 480 Pa. at 556, 558, 391 A.2d at 1025, 1026 (footnote omitted).

■ Courts and commentators have expressed some criticism of the principle espoused in *Azzarello* that public policy concerns in a strict liability case are for the courts to consider rather than the jury. *See: McKay v. Sandmold Systems Inc.*, 333 Pa.Super. 235, 482 A.2d 260 (1984). Nevertheless, the court in *McKay* recognized that the present state of the law is as set forth in *Azzarello* and it is not within this court's province to change existing law. *Id.*, 333 Pa.Superior Ct. at 245, 482 A.2d at 266. More recently, this court sitting *en banc* in *Dambacher by Dambacher v. Mallis*, 336 Pa.Super. 22, 485 A.2d 408 (1984), *allocatur granted, appeal dismissed*, 508 Pa. 643, 500 A.2d 428 (1985), reinterated the rule of *Azzarello*. Therein, it was noted that it is often difficult for a court to decide whether as a matter of social policy a jury should be permitted to impose strict liability. In a footnote the court listed factors a trial judge should consider when making this social policy decision. *Id.* 336 Pa.Super. at 51, 485 A.2d at 423. The

factors listed are strikingly similar to those mentioned herein by the trial court in its charge on defective condition. We agree with Appellant that it is for the court to balance these social policy factors when making its threshold inquiry determination that the case presents a jury question. The jury is not to be presented with the factors. *See also: Schriner v. Pa. Power & Light Co.*, 348 Pa.Super. 177, 501 A.2d 1128 (1985).[2]

 Appellant also complains that included in the court's charge are negligence concepts. Appellant further asserts the charge, in part, erroneously instructed the jury that Appellant's "misuse", "abuse" or "abnormal use" of the product was a defense to his strict liability claim. While isolated comments of the trial judge in this case, which may be considered improper, may not be sufficient for us to rule that a new trial is warranted, in the instant case the charge as a whole mandates such a result. On retrial, we would caution the court that the introduction of the element of due care or lack thereof is not an issue in a strict liability case. *Jackson v. Spagnola*, 349 Pa.Super. 471, 503 A.2d 944 (1986). And, while an examination of plaintiff's contributory negligence is not appropriate in a strict liability action, inquiry as to plaintiff's use of the product is relevant as it relates to causation. *Jackson v. Spagnola, Id.*, 349 Pa.Superior Ct. at 479, 503 A.2d 948; *Burch v. Sears, Roebuck & Co.*, 320 Pa.Super. 444, 467 A.2d 615 (1983).

One further aspect of the court's charge has been challenged by Appellant. It is asserted the trial court erred in denying Appellant's request for a charge on punitive dam-

2. We are aware of the dicta contained in the recent panel decision of *Foley v. Clark Equipment Co.*, 361 Pa. Super. 599, 523 A.2d 379 (1987), which discusses proof of design defects. We do not subscribe to the theories discussed in that decision and point out that those theories are merely dicta.

A product that is improperly designed is not less defective than one improperly manufactured and it can present the same risk of harm to the user. Certainly the Pinto gas tank cases and a host of others show that products manufactured according to design can still be defective. And, it is the defect, whether occassioned by labeling, design or manufacture, which creates the liability of the seller and not the stage in which the defect arose.

ages. Our Supreme Court had occasion to consider the application of a punitive damage charge in a products liability case in *Martin v. Johns-Manville Corp.*, 508 Pa. 157, 494 A.2d 1088 (1985). Therein, it was determined that a punitive damage charge would have been inappropriate since the plaintiff had presented insufficient evidence to support such a claim. Citing Comment *a* to Section 500 of the Restatement of Torts (Second), the Court defined the reckless conduct sufficient to create a jury question on the issue of punitive damages. Comment *a* describes this conduct as occurring where the "actor knows, or has reason to know, ... of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk". The Court observed: "[t]hus, punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a *reckless indifference* to the interest of others". *Martin v. Johns-Manville Corp.*, 508 Pa. at 171–172, 494 A.2d at 1097–1098 (citations omitted).

▮ In this case, as in *Martin v. Johns-Manville Corp.*, it was found Appellant had not established sufficient evidence to show the defendants were recklessly indifferent to the plaintiff's welfare or conducted themselves outrageously. The facts of the case support this result.

Appellant, herein, was injured on December 9, 1981 when the forklift he was operating began to tip. At that time, Appellant fell or jumped out of the vehicle to the ground in the direction of the tipover. The forklift also fell to the ground and Appellant was pinned under its overhead guard. Appellant points to the testimony of Townmotor's employees to bolster its claim that a punitive damage charge was warranted in this case. Testimony was received from Townmotor's current manager of Product Safety indicating that based upon incident reports he had seen, the operator tries to escape a tipping vehicle by jumping out of the low side approximately 40% of the time. He continued: "But less than half the time does the operator go in the direction

of the fall and get caught in the head guard". N.T. 11–13–1985 at 166. Also questioned was the President of Townmotor who had additional duties as the president of Industrial Truck Association, an organization of forklift manufacturers. In this later capacity, it was learned by letter dated August 18, 1980 that three employees of another company were fatally injured by the overhead guard when the forklifts they were operating overturned. The manufacturer of these forklifts was not identified. The President contacted the former manager of Product Safety & Ecology at Townmotor who was serving as a chairman of the Industrial Truck Association. This gentleman was asked by the President to respond to the letter. He then visite : the plant where the previous accident occurred and assurred those present that the organization was continually considering the stability of lift trucks.

We agree with the trial court that this evidence was insufficient to show that Appellees not only appreciated the risks Appellant encountered by operating the forklift, but also were indifferent to Appellant's welfare and acted outrageously. For this reason, the trial court correctly refused to charge the jury on punitive damages.

■ The final issue we are asked to address is the propriety of the trial court's action directing a verdict in favor of Caterpillar Tractor Company (Caterpillar). The facts of record indicate Caterpillar did not manufacture or sell the forklift at issue. The forklift was manufactured by Towmotor, which is a wholly-owned subsidiary of Caterpillar. *The Caterpillar trade name was, however, conspicuously displayed on the forklift.* The trial court ruled liability may not be imposed upon Caterpillar under these circumstances.

Appellant pointing to Section 400 of the Restatement (Second) of Torts, maintains Caterpillar, who permitted its name to be placed on the product, is subject to liability as is the manufacturer of the product, Towmotor. The Restatement provides:

§ 400 Selling as Own Product Chattel Made by Another.

> One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer.

Restatement (Second) of Torts § 400.

The Restatement (Second) of Torts § 400 was adopted as part of the law of Pennsylvania by our Supreme Court in *Forry v. Gulf Oil Corporation*, 428 Pa. 334, 237 A.2d 593, 599 (1968). Although the trial court found *Forry* inapplicable and distinguished it based upon its facts, we hasten to note that the court therein specifically applied § 400 in a strict liability case. The Court in *Forry* gave the following reasons for applying such an extension of liability:

> (a) the name and the trademark of the sponsor, constitute 'an assurance to the user of the quality of the product' and (b) 'reliance [by the user] upon a belief that [the sponsor] has required [the product] to be made properly for him'.

*Id.*, 428 Pa. at 344, 237 A.2d at 599. (citations omitted). More recently, in *Burch v. Sears, Roebuck and Co., supra,* this court remarked upon the rationale behind § 400 of the Restatement. "[T]he act of placing one's name on a product is a factor in assessing responsibility because it frequently causes a product to be used in reliance upon the seller's reputation." *Id.* 320 Pa.Super. at 460, 467 A.2d at 624.

In this case, although Caterpillar did not manufacture the product at issue and was not a supplier of the product participating in the chain of distribution, it did permit its name to appear on the equipment. Under such circumstances Caterpillar could expect others to purchase the product in reliance on the skill and reputation associated with the Caterpillar name. The Restatement (Second) of Torts § 400 was drafted in recognition of the fact that where one's name appears on a product "the actor's reputation is an assurance to the user of the quality of the product." Restatement (Second) of Torts § 400 comment (d).

It is for these reasons, Caterpillar should be held to the same responsibility as the seller of the forklift. Accordingly, we hold that Caterpillar, who although not the manufacturer, authorized the defendant manufacturer to display its name on the product, could be held strictly liable if the product bearing the Caterpillar name proved defective and the defect caused Appellant's injuries. Caterpillar must not be removed as a party in this case and the trial court's order directing a verdict in favor of Caterpillar is reversed.

Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.