600 A.2d 545

**William G. RUFFING**

v.

**84 LUMBER COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued July 30, 1991.

Filed Oct. 31, 1991.

Reargument Denied Jan. 13, 1992.

Larry K. Elliott, Pittsburgh, for appellant.

James F. Donohue, Butler, for appellee.

Before McEWEN, OLSZEWSKI and CERCONE, JJ.

CERCONE, Judge:

Although originally presented as an appeal from an order denying post trial relief, this is actually an appeal from the judgment entered following a jury verdict in favor of plaintiff/appellee, William Ruffing and against defendant/appellant 84 Lumber Company. For the reasons that follow, we affirm.

The events underlying the instant appeal began when, in the context of accepting a job as outside sales contractor with 84 Lumber, appellee signed two documents purporting to be "terms of compensation" or employment contracts. Appellee alleged at trial that he signed the first document in conjunction with his hiring by Regional Sales Contractor Manager, Ed Gold. He also alleged that he later signed the second document because 84 Lumber's Area Manager, Terry Tharnish, made representations it was identical to the first document and was needed to fill a gap in the files. Although the first document contained no covenant not to compete, the second document did contain such a clause.[1]

Appellee worked only a few weeks for appellant 84 Lumber before seeking employment with a competitor. Appellant wrote to the competitor informing them of the non-competition clause and threatening to obtain an injunction to prevent them from employing appellee. As a result, the competitor did not hire Mr. Ruffing. Although appellee requested 84 Lumber to withdraw its letter to the competitor, appellant refused to do so. Appellee subsequently initiated suit against appellant, alleging both tortious interference with contract and fraud in inducing appellee to sign the second document.

1. Copies of these writings were admitted into evidence at trial as Plaintiff's Exhibit 1 and 2, respectively.

A jury trial conducted before the Honorable John H. Brydon of Butler County, resulted in a verdict favoring 84 Lumber on the fraud count. However, the jury found in favor of appellee on the tortious interference claim and awarded him compensatory damages of $23,420.00 for lost wages and benefits as well as punitive damages in the amount of $15,000.00. Appellant subsequently filed post-trial motions which were denied by the lower court. A notice of appeal was filed with this court, and judgment was subsequently entered in the lower court.[2]

Appellant now raises the following five claims for our consideration:

1. The trial court should have excluded [appellee's] Exhibit 1 from evidence.
2. Because [appellee's] Exhibit 2 was the operative contract, 84 Lumber was justified in preventing [appellee's] employment with a competitor.
3. The trial court erred by instructing the jury on contract law and on failure of consideration when the only claims made by [appellee] were tort claims.
4. There was no factual basis upon which the jury could award punitive damages.
5. In his closing, counsel for [appellee] misrepresented the facts and the law concerning tortious interference. [Appellant] is therefore entitled to a new trial on the issue of tortious interference.

We shall consider these contentions *seriatim.*

Appellant's first complaint is that the trial court should have excluded plaintiff/appellee's Exhibit 1 from evidence. This document, a copy of the initial employment contract appellee signed with appellant, does not contain a covenant not to compete. The thrust of appellant's argument is that

---

**2.** A verdict favoring either the plaintiff or defendant following jury or non-jury trials in civil actions for damages is not appealable until judgment has been entered on the verdict. *Blacktop Paving Co., Inc. v. John Carlo, Inc.,* 292 Pa.Super. 404, 405, 437 A.2d 446, 447 (1981); *Dennis v. Smith,* 288 Pa.Super. 185, 186, 431 A.2d 350, 350–51 (1981). In the instant case, the jury verdict was rendered June 27, 1990 and the judgment was entered March 7, 1991.

it was error for the trial court to admit an unsigned, incomplete document into evidence for the purpose of contradicting the terms of a later and fully executed document. Although we agree with appellant's explanation of the law relating to integrated contracts, appellant's argument shoots wide of its mark.

Unquestionably, when parties adopt a writing as the final and complete expression of their agreement, evidence of negotiations leading to the formation of that agreement is inadmissible to vary the terms of the writing. *McGuire v. Schneider, Inc.,* 368 Pa.Super. 344, 348–49, 534 A.2d 115, 117 (1987), *aff'd,* 519 Pa. 439, 548 A.2d 1223 (1988). Appellant is correct that prior or contemporaneous oral representations or agreements concerning subjects that are specifically dealt with in a written contract are merged in or superseded by the contract. *Id.,* 519 Pa. at 349, 548 A.2d at 117. An unambiguous written contract must be held to express all the negotiations, conversations and agreements made prior to its execution; oral testimony, prior written agreements, and other writings are inadmissible to explain or vary the terms of the contract. *Id.,* 519 Pa. at 349, 548 A.2d at 117–18. However, our review of the record shows that appellee did not offer the questioned evidence for the impermissible purpose to which appellant now objects. Quite clearly, appellee introduced Plaintiff's Exhibit 1 to show that an employment relationship commenced at the time the first document was signed and not upon the execution of the second document. The challenged exhibit was not introduced to vary or contradict the terms of the second writing which appellant characterizes as a fully integrated contract of employment. Rather, it was introduced to show that the first writing comprises the agreement between the parties and that the second document has no legal effect.

The trial court has wide discretion in rulings on the relevancy of evidence and the propriety of its admission. *Dunkle v. West Penn Power Co.,* 400 Pa.Super. 334, 337, 583 A.2d 814, 815 (1990). We will not reverse such a determination absent an abuse of that discretion. *Id.* Any

evidence which tends to establish facts in issue or in some degree advance the inquiry at hand is relevant. *Scullion v. EMECO Industries, Inc.,* 398 Pa.Super. 294, 301, 580 A.2d 1356, 1360 (1990), *allocatur denied,* 527 Pa. 625, 592 A.2d 45 (1991). Appellee pled two counts in his complaint: tortious interference with his right of employment and fraud. The latter claim was based on the allegation that after signing a binding contract of employment, appellee was fraudulently induced to sign a second document which had been misrepresented to him as identical to the prior agreement set forth in Plaintiff's Exhibit 1. The contested exhibit was obviously relevant regarding the manner in which the two documents differed, as well as on the question of the benefits that accrued to appellant upon securing appellee's signature on the second employment contract. Plaintiff's Exhibit 1 was also relevant to the question of whether 84 Lumber was privileged to interfere with appellee's subsequent contract of employment with appellant's competitor. We see no indication that the trial court committed abuse of discretion in permitting the evidence to go before the jury, and we affirm on this issue.

█ The essence of appellant's second argument is that appellee's claim for tortious interference with contract must fail because appellant was justified in blocking appellee's employment by a competitor under the terms of Plaintiff's Exhibit 2, which appellant characterizes as "the operative contract." Appellant is correct that an actor is privileged to interfere with another's performance of a contract when: (1) the actor has a legally protected interest; (2) he acts or threatens to act to protect the interest; and (3) the threat is to protect it by proper means. *Gresh v. Potter McCune Co.,* 235 Pa.Super. 537, 541, 344 A.2d 540, 742 (1975). However, we disagree with appellant's conclusion that the methods utilized in this case were proper to protect a legally cognizable interest.

█ In this context, appellant contends that Plaintiff's Exhibit 2 must be deemed to be a valid employment contract because the jury found in its favor on the question of

whether 84 Lumber committed fraud in obtaining appellee's signature on that document. According to appellant, if the signature on Plaintiff's Exhibit 2 was not fraudulently induced, its terms necessarily govern the conditions under which appellee was employed by 84 Lumber. Thus, its covenant not to compete must be given full effect. We cannot, however, adopt this line of specious reasoning.[3]

Appellee certainly alleged at trial that his signature on the writing entered as Plaintiff's Exhibit 2 was procured by fraud. However, appellee also alleged, in the alternative, that the terms of his employment were governed by the first document and that the second document was an invalid modification and no true contract because it conferred no benefit corresponding to the detriment it imposed. Simply put, appellee contended that the first document was a valid contract but that the second document was not because it provided no additional consideration for the agreement to be bound by the covenant not to compete contained therein.

■ Our law is clear that where a restrictive covenant is executed after the commencement of employment, it will not be enforced unless the employee restricting himself receives a corresponding benefit or change in status. *Maintenance Specialties Inc. v. Gottus*, 455 Pa. 327, 330, 314 A.2d 279, 280 (1974); *Wainwright's Travel Service v. Schmolk*, 347 Pa.Super. 199, 204, 500 A.2d 476, 478 (1985). Both writings were properly before the jury to elucidate the questions of when appellee was actually hired and which document embodied the terms of his employment. We agree with the trial court's conclusion that the jury was

---

**3.** We remain unconvinced by the reiteration and amplification of this argument in appellant's reply brief. Fallacious contentions do not become meritorious simply through repetition. We note that appellant contends in its reply brief that the document exemplified by Plaintiff's Exhibit 2 "acted as a novation." This argument was neither fully developed nor supported by caselaw or statutory precedent. It is therefore waived. *Taurino v. Ellen*, 397 Pa.Super. 50, 58, 579 A.2d 925, 930 (1990), *allocatur denied*, 527 Pa. 603, 589 A.2d 693 (1991). *See also Ibn–Sadiika v. Riester*, 380 Pa.Super. 397, 401–02, 551 A.2d 1112, 1114 (1988) (point is waived when not properly carried forward by appellant).

free to find the first document to be a valid contract because it contained both appellant's promise to hire appellee and appellee's promise to work for appellant. Having accepted Plaintiff's Exhibit 1 as the operative contract, the jury could properly find that Plaintiff's Exhibit 2 conferred no privilege upon appellant to interfere with appellee's attempt at seeking employment with appellant's competitor.

 Appellant also contends that a good faith belief in the validity of Plaintiff's Exhibit 2 constituted a sufficient "good faith" defense to negate appellee's claim of tortious interference with contract. We disagree, however, with appellant's characterization of any such "good faith" defense as it pertains to the constituent factors of the tort in question. In Pennsylvania, a plaintiff must demonstrate four elements in order to sustain a cause of action for intentional interference with contractual relations:

(1) a prospective contractual relation;
(2) the purpose or intent to harm the plaintiff by preventing the relation from occurring;
(3) the absence of privilege or justification on the part of the defendant; and
(4) the occasioning of actual damage resulting from the defendant's conduct.

*Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 208, 412 A.2d 466, 471 (1979). The question of whether a defendant has acted in "good faith" appears to implicate both the second and third of these component factors. Our law does not, however, encompass an explicit "good faith" test in the context of intentional interference with contractual relations.[4] Rather, the Pennsylvania Supreme Court has deter-

---

**4.** The recent case of *Kelly–Springfield Tire Company v. D'Ambro*, 408 Pa.Super. 301, 596 A.2d 867 (1991) concerns an action filed against a lawyer for wrongful use of civil process and intentional interference with a prospective contractual relationship. The plaintiff in *Kelly–Springfield* averred that the defendant did not "act in good faith" to preserve a legally protected interest of his client, but rather acted from the improper motive of harassing the client's adversary. Although the case discusses the concept of "good faith," *Kelly–Springfield* has not adopted "good faith" as a *per se* defense to a claim of

mined that the relevant inquiry must focus on the *propriety* of a defendant's conduct considering the factual scenario as a whole. *Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 432–33, 393 A.2d 1175, 1183–84 (1978), *cert. denied,* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979). The *Adler* court found the following extract from comment b to section 767 of the Restatement (Second) of Torts highly relevant:

> *Privilege to interfere, or interference not improper.* Unlike other intentional torts such as intentional injury to person or property or defamation, this branch of tort law has not developed a crystallized set of definite rules as to the existence or non-existence of a privilege to act in the manner stated in §§ 766, 766A or 766B. Because of this fact, this Section is expressed in terms of whether the interference is improper or not rather than in terms of a specific privilege to act in the manner specified. The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another."

*Adler, supra,* 482 Pa. at 433 n. 17, 393 A.2d at 1184 n. 17.

Following the lead provided by *Adler, supra,* we shall evaluate the facts of the instant case under section 767 of the Restatement (Second) of Torts. It is therefore instructive to set forth the specific provision involved:

### § 767. Factors in Determining Whether Interference is Improper

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

(a) the nature of the actor's conduct,

intentional interference with contractual relations. Instead, the *Kelly–Springfield* court applied the traditional standards expounded in *Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 393 A.2d 1175 (1978) which are discussed *infra.*

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

Restatement (Second) of Torts, § 767. Our analysis is tempered by recognizing that the second element of the tort, the "purpose or intent to harm" the plaintiff by preventing the contractual relation from occurring, "must be understood as requiring only an intention to interfere with the plaintiff's prospective contractual relation, and not malevolent spite by the defendant." *Yaindl v. Ingersoll–Rand Co.*, 281 Pa.Super. 560, 581 n. 11, 422 A.2d 611, 622 n. 11 (1980). Ill will toward the person harmed is not an essential condition of liability. *Id.* Nor is a "specific intent to harm" required in Pennsylvania in order to sustain an action for intentional interference with contract. *Id.*, 281 Pa.Superior Ct. at 582 n. 11, 422 A.2d 611, 622 n. 11. The third element, absence of the privilege to act, simply imports "purposeful interference without justification." *Id.*

The first two factors for consideration under section 767 are the nature of the actor's conduct and the actor's motive. Appellant argues that any discussion of the conduct and motive to be scrutinized is to be confined to the actions of corporate counsel for 84 Lumber.[5] In this regard, appellant contends that corporate counsel wrote to the

---

5. Strictly speaking, appellee has challenged the conduct of appellant as a corporate entity, and not merely the actions of corporate counsel. Consideration of the "good faith" of 84 Lumber as an entity cannot be confined solely to the actions and motivations of a single employee: corporate counsel was not operating in a vacuum. At a minimum, this line of inquiry implicates the question of whether the Regional Sales Contractor Manager and the Area Manager also acted in "good faith" by supplying incomplete information to corporate counsel via Mr. Ruffing's personnel file.

competitor "in good faith" based on the information in Mr. Ruffing's personnel file. We will accept, for the sake of appellant's argument, that the conduct in question is that of Mr. Bosilovic rather than that of all 84 Lumber employees. However, whether corporate counsel acted in good faith in deciding to send a letter to the competitor still constitutes only part of the picture.

At trial, Mr. Bosilovic testified that he sent a letter to appellee's potential employer falsely claiming that Mr. Ruffing had signed a non-competition agreement which barred him from accepting employment with a competitor located within twenty-five miles of *any* 84 Lumber location. N.T. 6/26/90 at 238–39. In actuality, the non-competition clause stated only that Mr. Ruffing could not work for a competitor located within twenty-five miles of the *specific* 84 Lumber store to which he had been assigned.[6] *See* Plaintiff's Exhibit 3. Even assuming that Mr. Bosilovic had a genuine "good faith" belief that Mr. Ruffing was bound by the non-competition clause, by the terms of that very clause he could not possibly have held any such belief regarding 84 Lumber's right to prevent appellee's employment in a location which was beyond the twenty-five mile limit stated in the agreement. Under these circumstances, we have no difficulty concluding that appellant's reliance on a "good faith" defense is simply misplaced.

Appellant next contends that it was error for the trial judge to instruct the jury on contract law and on failure of consideration when the only claims made by appellee sounded in tort. According to appellant, "Why the trial court instructed the jury with regard to contract law remains a mystery." Appellant's brief at 14. Contrary to appellant's assertions, however, we see no cause for mystification in the jury instructions. It is well established that the primary duty of the trial judge when charging the jury is to clarify all matters so that the jury may comprehend the questions they are to decide. *Brandimarti v. Caterpillar*

6. The certified record is unclear whether 84 Lumber's competitor is located outside the latter twenty-five mile limit.

*Tractor Co.*, 364 Pa.Super. 26, 29, 527 A.2d 134, 136 (1987), *allocatur denied*, 517 Pa. 629, 539 A.2d 810 (1988); *Wood v. Smith*, 343 Pa.Super. 547, 495 A.2d 601 (1985), *allocatur denied*, 512 Pa. 641, 518 A.2d 266 (1986).

As discussed *supra*, in order to establish the tort of interference with contractual relations, a plaintiff must prove that the defendant acted in the absence of privilege or justification. In the instant case, the jury's determination of whether appellant was privileged to prevent appellee's employment with a competitor hinged on the question of whether either Plaintiff's Exhibit 1 or 2 constituted a binding contract which governed the case. The trial court correctly recognized this fact and charged so as to enable the jury to understand the law regarding contract formation and consideration. Nor are we surprised that the jury viewed the non-competition clause in Plaintiff's Exhibit 2 as being of special interest. The presence or absence of this clause constituted the major difference between the two employment contracts.[7]

Our supreme court has explained the scope of review applicable to appellant's claim in the following manner:

When reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.

*Reilly by Reilly v. SEPTA*, 507 Pa. 204, 231, 489 A.2d 1291, 1305 (1985) (citations omitted); *Schecter v. Watkins*, 395 Pa.Super. 363, 577 A.2d 585 (1990); *allocatur denied*, 526 Pa. 638, 584 A.2d 320 (1990). Contrary to appellant's assertions, the trial judge was not required to charge in compli-

7. We note additionally that a proper understanding of the nature and effect of such a clause in Plaintiff's Exhibit 2 constitutes a necessary underpinning for the jury's proper deliberation on the claim of fraud in connection with appellee's signature on that document. The jury instruction did not become erroneous and irrelevant because the jury found in favor of appellant and against appellee on this question.

ance with the specific points supplied by counsel. *Brandimarti v. Caterpillar Tractor Co., supra,* 364 Pa.Superior Ct. at 29, 527 A.2d at 136. The trial court has wide latitude as to the manner in which the charge is phrased. *Berman v. Radnor Rolls, Inc.,* 374 Pa.Super. 118, 143, 542 A.2d 525, 537 (1988). Any particular language may be used as long as it fully and adequately covers the applicable law. *Id. Accord Hawthorne v. Dravo Corp., Keystone Div.,* 352 Pa.Super. 359, 508 A.2d 298 (1986), *allocatur denied,* 514 Pa. 617, 521 A.2d 932 (1987). Mindful of this standard of review, we have carefully scrutinized the certified record in the instant case. Finding no indication that the jury charge was either legally erroneous or inapplicable on the evidence presented at trial, we affirm on this issue.

 Appellant's fourth argument is that there was no factual basis upon which the jury could have awarded punitive damages. Assessment of punitive damages is proper when a party's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct. *SHV Coal, Inc. v. Continental Grain Co.,* 526 Pa. 489, 493, 587 A.2d 702, 704 (1991). Appellant correctly states that Pennsylvania has adopted section 908(2) of the Restatement (Second) of Torts. However, appellant urges us to employ too narrow an interpretation of that provision. Section 908(2) permits punitive damages to be awarded for conduct that is outrageous either because of the defendant's evil motive or because of his reckless indifference to the rights of others. *Id.,* 526 Pa. at 493, 587 A.2d at 704. "In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause[,] and the wealth of the defendant." *Id.,* quoting Restatement (Second) of Torts, § 908(2).

 In this regard, appellant contends that no evidence of malicious, wanton, reckless, willful and oppressive conduct by 84 Lumber was presented at trial. We disagree with this allegation because our careful review of the

record has convinced us that the trial court's analysis of the evidence is correct:

> [S]uch evidence did exist and included the following: [appellant] blatantly ignoring the protests of [appellee] that he had already signed a contract and that the second one was unnecessary; [appellant's] unexplained and unwarranted failure to investigate the validity of [appellee's] concerns; and, the unprofessional hiring procedures used by [appellant] as evidenced by [appellant's] sloppy control of paperwork which resulted in the loss of the original contract.

Trial court opinion at 3–4.

A single example serves to demonstrate the baselessness of appellant's argument. The certified record contains a copy of the letter written to 84 Lumber's competitor, Lezzer Lumber, by Robert J. Bosilovic, corporate counsel for appellant. *See* Plaintiff's Exhibit 3. This letter states, *inter alia*, that "Mr. Ruffing's Terms of Compensation Agreement contained a covenant not to compete with 84 Lumber Company for a period of twenty-four (24) months in an area within a radius of twenty-five (25) miles from *any* 84 Lumber location." *Id.* (emphasis added). Yet at trial, Mr. Bosilovic testified that this statement in the letter was incorrect. N.T. 6/26/90 at 238–39. The actual non-competition clause contained in Plaintiff's Exhibit 2 merely barred Mr. Ruffing from employment with a competitor located within twenty-five miles of the *specific* 84 Lumber Store for which he had previously worked.[8] *Id.* The certified record is silent as to whether appellant ever attempted to correct the erroneous information conveyed to Lezzer Lumber. In light of this, as well as the additional evidence presented, it was within the province of the jury to find that the hiring practices used by 84 Lumber were based on reckless indif-

---

8. Mr. Bosilovic characterized this error as "a typographical mistake," blaming in the alternative, himself, his secretary, or "the computer" for the fault. N.T. 6/26/90 at 238–39. Mr. Bosilovic's averment to the contrary, no evidence was presented at trial that 84 Lumber possesses a computer capable of independent volition.

ference to the rights of others. We therefore can grant no relief on this claim.

The final argument advanced by appellant is that 84 Lumber is entitled to a new trial on the issue of tortious interference with contract because appellee's counsel misrepresented the facts and the law governing tortious interference in his closing argument. Indubitably, a lawyer must act with decorum and must not misquote testimony, take liberties with evidence, or unfairly ill treat witnesses or opposing counsel during summation to the jury. *Purcell v. Westinghouse Broadcasting Co.,* 411 Pa. 167, 185, 191 A.2d 662, 671 (1963). However, trial counsel must be expected to advance spirited argument to support the client's cause. *O'Malley v. Continental Insurance Co.,* 305 Pa.Super. 302, 309, 451 A.2d 542, 546 (1982). Whether counsel's speech transgresses appropriate parameters is a matter left to the discretion of the trial judge. *Purcell v. Westinghouse, supra.* *See also Federal Land Bank of Baltimore v. Fetner,* 269 Pa.Super. 455, 410 A.2d 344 (1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980) (extent of final argument in civil cases is addressed to the discretion of the trial judge). In this regard, the words penned nearly half a century ago by Justice Musmanno remain equally applicable today:

> There is nothing in the law, and certainly nothing in the history of American forensic appeal, which remotely suggests that a lawyer's summation must be a prosaic and dull affair, devoid of metaphor, empty of simile, and stranger to dramatic, poetical, or sentimental allusion. So long as no liberties are taken with the evidence, a lawyer is free to draw such inferences as he wishes from the testimony and to present his case in the light most suited to advance his cause and win a verdict in the jury box.

*Contractors Lumber and Supply Co. v. Quinette,* 386 Pa. 517, 522, 126 A.2d 442, 444 (1956).

As stated previously, we have carefully reviewed the record in the instant case. We are satisfied, despite appellant's extensive argument to the contrary, that appellee's

counsel did not transgress the bounds of proper summation. Appellant appears to have forgotten that appellee was advancing claims of both fraud and interference with contract. While certain of counsel's remarks, taken in isolation, appear inapposite and prejudicial on the question of interference with contract, these statements are perfectly reasonable and relevant regarding the alleged fraud.

Moreover, we find that the trial court gave a comprehensive jury charge which correctly set forth the law of this Commonwealth on the pertinent concepts. N.T. 6/26/90 at 319–332. The trial court stressed that the jury was the sole arbiter of what is, and what is not, a fact in the case. *Id.* The trial judge explicitly charged that only the court, and not trial counsel, could tell the jury what law should apply in reaching their decision. *Id.* The court's initial charge was followed, at the request of counsel for both parties, with further elucidation on certain points. *Id.* at 336–342; 345–346; N.T. 6/27/90 at 349–350. Subsequently, the jury requested clarification on the definition of the terms "fraud" and "tort." After proper consultation with counsel, the lower court provided correct explanations. N.T. 6/27/90 at 351–363. Under these circumstances, we have no difficulty concluding that any possible prejudice to the appellant was cured by the lower court's instructions.

Judgment affirmed.