**Kolar v. Buffalo Pumps Inc.**

*Steven J. Cooperstein,* for plaintiffs.
*John S. Howarth,* for defendant Buffalo Pumps, Inc.
*Matthew W. Reber,* for defendant FMC Corp.
*John F. Kent,* for defendant Gormann Rupp Co.
*Robert F. Spinelli,* for defendant Ingersoll-Rand Co.
*James E. Delbello,* for defendant Yarway Corp.

MOSS, *J.,* August 2, 2010—Plaintiffs Stephen J. Kolar and his wife, Carol Kolar, appeal our orders granting

summary judgment in favor of Buffalo Pumps Inc., FMC Corp., Gormann Rupp Co., Ingersoll-Rand Co. and Yarway Corp. (collectively, the defendants). For the following reasons, our orders should be affirmed.

## I. BACKGROUND

Plaintiffs commenced this asbestos mass tort action on April 6, 2009. The complaint alleges plaintiff Stephen Kolar contracted mesothelioma from exposure to products manufactured or supplied by defendants. Complaint, ¶4. The complaint incorporates by reference the master long-form complaint filed at October term 1986, no. 0001, pleading counts of strict liability and negligence. Plaintiffs' general master long-form complaint, ¶¶ 6-12.

From 1972 until 1975, Kolar was employed by Grand Forks, North Dakota, in part- and full-time positions at the Grand Forks water maintenance shop (until about 1974), wastewater plant (until about 1975), and water treatment plant (until 1995). Deposition of Stephen J. Kolar, 5/6/2009, 34-35. Kolar testified he performed maintenance work on Buffalo, Chicago, Gorman, and Ingersoll centrifugal and sludge pumps while employed by Grand Forks. *Id.* at 148. Chicago pumps were used for cold water pressurization. *Id.* at 92-93. Gorman-Rupp sludge and centrifugal pumps were used at the wastewater plant, as were Ingersoll-Rand centrifugal pumps. *Id.* at 148-49. The record is unclear about how Buffalo pumps were used at Grand Forks.

Kolar testified his maintenance work caused him to contact asbestos gaskets, or remnants thereof, on pump case housings and flanges. See *e.g.* Kolar deposition,

155-56 (describing Kolar's maintenance of Buffalo pumps). Kolar identified the gaskets as manufactured either by Garlock Inc. or Crane Co. *Id.* at 96, 151-52, 155, and 156. Both Crane and Garock Sealing Technologies LLC, individually and as successor-in-interest to Garlock, were also named defendants. Plaintiffs' complaint, 2.

Plaintiffs submitted evidence Buffalo centrifugal pumps may have used asbestos gaskets in its "chem-rated pumps." Plaintiffs' response to defendant Buffalo Pumps Inc.'s motion for summary judgment, exhibit A (bulletin 803A), 27. Bulletin 803A, a sales brochure of unknown vintage, includes a table entitled "materials of construction." *Id.* The entry for component number 65 states "asbestos standard/teflon optional." *Id.* The entry for components 65J and 65K states "asbestos (standard)." *Id.* The table entries apparently correspond to a parts diagram on the preceding page. *Id.* at 26. The parts diagram is wholly illegible. See *id.*

Plaintiffs also submitted Buffalo's responses to plaintiff's interrogatories and request for production of documents from *Shaeffer v. A. W. Chesterton* before the Honorable H. A. Hanna of the Cuyahoga County Court of Common Pleas in Ohio. Plaintiffs' reponse to Buffalo's motion for summary judgment, exhibit F. In relevant part, the admissions state:

"By way of further response, the Buffalo Pumps Division of the Buffalo Forge Co., since at least approximately 1955, manufactured, among other things, pumps. These pumps were made of metal alloys, and the pumps themselves contained no asbestos materials. The metal

components of certain of these pumps required packing and gaskets. Upon manufacture, the original pump was typically supplied to a customer with the appropriate packing and gaskets. Buffalo Pumps Inc. also believes that the Buffalo Pumps Division of the Buffalo Forge Company on some occasions provided small numbers of gaskets to certain customers along with replacement parts for pumps. From at least approximately 1955 to approximately 1985, gaskets and packing supplied in certain original centrifugal pumps may have contained asbestos." *Id.* at 8.

Plaintiffs submitted no evidence Kolar worked on gaskets original to any Buffalo pump.

As to Chicago, Gorman, and Ingersoll, plaintiffs submitted no evidence those manufacturers' pumps came with any original asbestos components at all or that Kolar worked on gaskets original to those pumps.

As to Yarway, Kolar testified steam trap maintenance caused him to contact asbestos insulation covering the traps, adjacent piping, or asbestos gaskets, or remnants thereof, on trap flanges. Kolar deposition, 139-40. Kolar identified Garlock as manufacturer of the flange gaskets. *Id.* at 139. Kolar testified there were no asbestos components inside the trap itself. *Id.* at 340. Kolar also testified Yarway did not supply "any insulation on the flanges or on the pipes leading to the steam trap." *Id.* at 341.

In separate summary judgment motions, defendants argued for dismissal because plaintiffs failed to satisfy the product identification requirements of *Eckenrod v. GAF Corp.,* 375 Pa. Super. 187, 544 A.2d 50 (1988). See *e.g.* Buffalo's motion for summary judgment, 1-2. *Eck-*

*enrod* requires a plaintiff in an asbestos products liability suit to adduce sufficient evidence of exposure to "a product of the particular manufacturer or supplier" being sued. 375 Pa. Super. at 190-91, 544 A.2d at 52. Because Kolar identified Garlock and Crane gaskets, and not any product of defendants, plaintiffs could not meet the *Eckenrod* product identification requirement. See *e.g.* Buffalo's motion for summary judgment, 1. Additionally, some defendants argued under Pennsylvania law, a manufacturer is not liable for replacement materials manufactured, sold or supplied by others after a product has left manufacturer's control. See *e.g.* Gorman-Rupp's motion for summary judgment, 3.

Plaintiffs responded defendants were liable for "placing [products] into the stream of commerce that required, and specifically called for the use of asbestos gaskets, like the ones Mr. Kolar as exposed to." See *e.g.* plaintiffs' response to Buffalo's motion for summary judgment, 6. Citing *Chicano v. General Elec. Co.,* 2004 U.S. Dist. Lexis 20330 (turbine manufacturer liable for injury from third-party asbestos insulation), plaintiffs argued defendants were liable for failing to warn. *Id.* at 6-7. As to Buffalo alone, plaintiffs argued the product specifications called for asbestos gaskets. *Id.* at 4.

In separate replies, defendants argued once again plaintiffs failed to make product identification. See *e.g.* Buffalo's reply to its motion for summary judgment, 1. Defendants also argued *Chicano* did not control, because unlike the *Chicano,* turbines, the pumps and traps here did not require asbestos and defendants never suggested using asbestos. *Id.* at 2.

After consideration of each motion, response and reply, we separately granted defendants' summary judgment motions and dismissed all claims against defendants by orders dated December 1, 2009 and docketed December 2, 2009, On December 10, 2009, after eight days of trial, the case was marked settled, discontinued and ended by the trial judge. Order of Honorable Eugene E. Maier, entered 12/10/2009 and docketed 12/17/2009.

On January 19, 2010, plaintiffs filed this appeal. On February 23, 2010, response to this court's order, plaintiffs filed a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), which stated:

"The grounds upon which plaintiffs claim error are those raised in their responses to the summary judgment motions. These grounds are identified in general terms because, without a written opinion, plaintiffs cannot readily discern the basis for the court's decision. By way of explanation and without waiving any other applicable grounds for appeal, plaintiffs claim error because, plaintiffs' evidence established that Stephen J. Kolar was exposed to asbestos fibers shed from products manufactured and/or supplied by [appellees]. Because genuine issues of material fact remained, defendants' motions for summary judgement should have been denied." Plaintiffs' statement of matters complained of on appeal, 1-2.

## II. DISCUSSION

### a. *Untimeliness of Appeal*

As a threshold matter, we note plaintiffs filed the appeal untimely. An appeal may be taken as of right from

any final order of a lower court. Pa.R.A.P. 341(a). A final order is one that disposes of all claims and all parties, is expressly defined as final by statute or is entered as a final order by express determination of the lower court. Pa.R.A.P. 341(b), (c). In general, the time for appeal is 30 days after a final order is entered. Pa.R.A.P. 903.

Here, we granted summary judgment as to less than all defendants by orders dated December 1, 2009 and docketed December 2, 2009. The order marking the case settled, discontinued and ended was issued on December 10, 2009 and docketed on December 17, 2009. None of Pa.R.A.P. 903(b)'s exceptions to the 30-day time for appeal apply here, because this is not a criminal, election or public debt matter. Thus, plaintiffs had until January 16, 2010 to file notice of appeal and offer not a single excuse for their tardiness. Plaintiffs did not file this appeal until January 19, 2010. Thus, the appeal is untimely.

An appellate court "may not enlarge the time for filing a notice of appeal," absent fraud or administrative breakdown. Pa.R.A.P. 105(b). Since plaintiffs do not point to any extenuating circumstance preventing timely appeal after their December 10, 2009 settlement, the appeal should be quashed. However, we will also reach the substantive issues for a complete record.

### b. *Products Liability*

We granted summary judgment because we found a manufacturer cannot be liable for injury caused by an asbestos part installed onto its product, where it does not make, supply or sell said part, where product does not

require the asbestos part to function properly, and where manufacturer does not call for use of said part. Reviewing the record, we found plaintiffs failed to adduce evidence sufficient for a jury to determine whether defendants' pumps and steam traps were supplied to Grand Forks with original asbestos gaskets or whether the pumps and traps required asbestos gaskets to function properly. We also found plaintiffs failed to adduce sufficient evidence to determine whether defendants required asbestos gaskets to be used with pumps and traps. Thus, we dismissed plaintiffs' claims.

In general, a manufacturer or seller of an allegedly defective product is liable for harm caused to the ultimate user, if it makes or sells such a product and said product reaches the user without substantial change in condition. *Davis v. Berwind Corporation,* 547 Pa. 260, 265, 690 A.2d 186, 189 (1997) (citing section 402A of the Restatement (Second) of Torts, adopted by Pennsylvania in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966)). Where the product is substantially changed, we inquire whether the manufacturer could have reasonably expected or foreseen such an alteration. *Eck v. Powermatic Houdaille,* 364 Pa. Super. 178, 192, 527 A.2d 1012, 1019 (1987).

Here, plaintiffs presented insufficient evidence to determine whether defendants' products contained original asbestos parts to which Kolar was exposed. "In determining whether to grant a motion for summary judgment, the trial court must view the record in the light most favorable to the non-moving party and resolve any doubts as to the existence of a genuine issue of material fact against the moving party." *Gilbert v. Monsey Products Company,* 861 A.2d 275, 276 (Pa. Super. 2004). As

to Buffalo, bulletin 803A and Buffalo's answers to interrogatories from the *Shaeffer v. A.W. Chesterton* case support only an inference the Grand Forks pumps may have originally contained some unidentified asbestos components. Kolar did not testify he worked on gaskets original to Buffalo or any other pumps. As to steam traps, Kolar testified there were no asbestos components inside the trap itself and Yarway did not supply "any insulation on the flanges or on the pipes leading to the steam trap." *Id.* at 340-41. Therefore, a jury could not conclude defendants supplied the asbestos to which Kolar was exposed.

Plaintiffs' claims may still have proceeded under the substantial change doctrine. Whether the manufacturer could have foreseen alteration of its product may be resolved by the fact-finder unless inferences are so clear a court can say as a matter of law a reasonable manufacturer could not have foreseen the change. *D'Antona v. Hampton Grinding Wheel Company Inc.,* 225 Pa. Super. 120, 125, 310 A.2d 307, 310 (1973).

No Pennsylvania authority addresses whether the addition of an asbestos gasket to a pump or steam trap should have been foreseeable. Generally, a component part manufacturer has no duty to warn of inherent dangers when it does not participate in design or construction of the finished product. *Wenrick v. Schloemann-Siemag A.G.,* 523 Pa. 1, 5-6, 564 A.2d 1244, 1247 (1989). However, in *Chicano v. General Elec. Co.,* the U.S. District Court for the Eastern District of Pennsylvania considered whether Pennsylvania law required a defendant turbine manufacturer to warn of risks from third-party asbestos insulation added after delivery. 2004 U.S. Dist. Lexis

20330. Distinguishing *Wenrick,* the *Chicano* court found the defendant manufacturer liable because, it estimated, asbestos insulation would inevitably be installed on the turbine. *Id.* at 21.

We find *Chicano* distinguishable from the instant case. Here, plaintiffs provided not a scintilla of evidence asbestos gaskets would inevitably be added to defendants' pumps and traps. In addition, they presented no evidence the pumps or traps even required asbestos parts. To the contrary, Kola's testimony suggests the pumps were used only in low heat applications. Plaintiffs also presented no evidence defendants' manuals or product specifications required asbestos gaskets. As to Buffalo only, plaintiffs point to bulletin 803A. Plaintiffs' response to defendant Buffalo Pumps Inc.'s motion for summary judgment, exhibit A (bulletin 803A), 27. However, bulletin 803A does not state asbestos gaskets should be used with Buffalo pumps and neither do Buffalo's interrogatory answers from the *Shaeffer* case. Rather, the bulletin and the answers show only some of Buffalo's pumps may have been supplied with asbestos parts. Thus, plaintiff-could not possibly prove by a preponderance of the evidence defendants should have foreseen asbestos gaskets would be added to their pumps and traps.

We find persuasive authority from other jurisdictions supports our analysis. In *Simonetta v. Viad Corp.,* the Supreme Court of Washington held under section 402A of the Restatentent (Second) of Torts an evaporator manufacturer was not liable for asbestos injury where the evaporator was completed without asbestos insulation, which was eventually applied but not made, sold or selected by manufacturer. 197 P.3d 127 (Wash. 2008);

see also, *Braaten v. Buffalo Pumps Inc.,* 198 P.3d 493 (Wash. 2008) (adopting the reasoning of *Simonetta* and holding pump, valve, and turbine manufacturers not liable to warn about a asbestos products installed on their products by others). In *Lindstrom v. A-C Product Liability Trust,* the U.S. Court of Appeals for the Sixth Circuit similarly declined to hold a pump manufacturer liable for injury allegedly due to third-party replacement asbestos gaskets and packing. 424 F.3d 488 (6th Cir. 2005).

Moreover, our decision to grant summary judgment reflects the social policy underlying Pennsylvania's products liability law: personal injury losses should be allocated to those who can best mitigate and avoid such losses. The burden of personal injury is placed on the party best able to shoulder costs and administer risks. *Walton v. Avco Corporation,* 530 Pa. 568, 575, 610 A.2d 454, 458 (1992). Pennsylvania courts have generally found manufacturers and sellers able to allocate such losses most effectively through cost increases and insurance. *Id.* Therefore, liability should be borne by those who control the price and benefit from the profits. Here, liability should not fall on defendants, who did not control Grand Forks' use of asbestos materials and who received no economic benefit therefrom.

## III. CONCLUSION

For the foregoing reasons, we correctly granted summary judgment and our orders should be affirmed.