Margaretta Conderman **CARTER**

v.

**JOSEPH BANCROFT & SONS CO. and Indian Head, Inc.**

**Civ. A. No. 69–1758.**

United States District Court,
E. D. Pennsylvania.

July 12, 1973.

The page is almost entirely redacted with black boxes. The only readable text is the page number "1104" at the top left.

Henry T. Reath, of Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff.

Peter P. Liebert, 3rd, of Liebert, Short, Fitzpatrick & Lavin, Philadelphia, Pa., for defendants.

MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

This is a personal injury action arising from an accident in which the dress of plaintiff, Margaretta Conderman Carter, allegedly caught fire, causing her serious injuries. Plaintiff has brought this action against defendant, Indian Head, Inc., and defendant, Joseph Bancroft & Sons Co., a division of Indian Head, Inc., and alleges that defendants are liable to plaintiff under the laws of Pennsylvania on theories of strict liability, breach of warranty, and negligence. The legal positions of both defendants are identical. Jurisdiction of this Court is founded on diversity of citizenship, and the parties agree that the law of Pennsylvania governs this case. This case was tried before the late Judge Harold Wood and a jury. The trial was bifurcated and the jury returned a verdict in favor of plaintiff against defendants in the liability phase, and thereafter awarded plaintiff the sum of $75,000 as damages.

Presently before the Court are defendants' motion for judgment notwithstanding the verdict and plaintiff's motion for a new trial limited to damages. For reasons appearing hereinafter, we deny the respective motions of defendants and plaintiff.

I

*Liability as a Manufacturer and Seller Under the Restatement of Torts, Second, §§ 400, 402A*

In support of their motion for judgment notwithstanding the verdict pursuant to Rule 50 of the Federal Rules of Civil Procedure, defendants forcefully assert that they are not liable to plaintiff even on the strict liability theory of the Restatement of Torts, Second, § 402A (1965). Since the verdict returned by the jury was in favor of plaintiff, we must review the evidence in the light most favorable to plaintiff. Thus, viewed the evidence establishes that sometime prior to September 3, 1967, plaintiff purchased a dress which had affixed to it a tag or label containing the following printed material:

"BAN–LON Fashion

This BAN–LON fashion is beautifully different, outstandingly easy-care.

You will find it wearable, versatile, packable. Its equal in performance is not to be found, because of the unique, exclusive crimp in the Textralized yarn from which it is made.

"BAN-LON is a trademark identifying garment, fabrics, and articles made according to specification and quality standards prescribed and controlled by Joseph Bancroft & Sons Co., a division of Indian Head, Inc.

"Unauthorized use of this tag is prohibited. 18-65-10 J. B. & S. Co. 1966 Printed in USA".

And on the reverse side:

"A Beautiful BAN-LON Fashion
Anika
New York."

The evidence is undisputed that plaintiff purchased the dress from a retail shop owned and operated by plaintiff's mother and there is evidence that the plaintiff was aware of the aforesaid tag on which was imprinted on the reverse side thereof, the word "Anika."

Prior to the evening of the accident, September 3, 1967, plaintiff had worn the dress several times but had not had it washed or dry cleaned. On the evening of September 3, 1967, plaintiff attended a dinner party and was seated with seven other persons at a rectangular dinner table in the home of her host. As the host prepared a second round of crepe suzettes, there occurred, from an unknown source, a sudden fire which engulfed all of the guests in flame. A witness testified that just as quickly as the fire occurred, it was over. The top of Mrs. Carter's dress "flamed, burned, and vanished." Mrs. Carter suffered severe burns of her upper body. Although the flames from the sudden fire engulfed all of the guests, only Mrs. Carter's clothes were ignited in flames and only Mrs. Carter and another guest, Dr. Creatore, suffered any burns. There is testimony that after the fire Dr. Creatore had a "hole in the back of his coat, like a scorch mark, but it hadn't burned all the way through." The clothing of the other six persons present in the room did not burn. The testimony further reveals that other guests wore clothing made of flannel and cotton, and the table cloth was linen; none of the aforesaid fabrics burned. Immediately before the sudden fire, items such as sterno, alcohol, liquor and candles were present in the room; however, no flammable liquids had been spilled on plaintiff.

Defendants resourcefully contend that, under the evidence, they cannot be liable under Section 402A of the Restatement of Torts, Second, because they were not the "seller" within the meaning of the section.[1] As defendants recognize and as the Court notes, one who manufactures a product is a "seller" under Comment "f" to Section 402A. It is apparently the position of defendants that they are not the "manufacturer" but only a licensor who permits articles made according to specification and quality standards prescribed and controlled by them to be identified by defendants trademark, "BAN-LON." As support for this thesis, defendants maintain that there is no authority in Pennsylvania, or elsewhere, holding a licensor liable as a seller. However, it is clear that defendants were sufficiently in-

1. Restatement (Second) of Torts § 402A (1965), which is the law of Pennsylvania, Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966) reads as follows:
"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
"(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not brought the product from or entered into any contractual relation with the seller."

volved in the manufacturing process to be a "seller" under the law of Pennsylvania. Under Pennsylvania law, one who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer. This results from Pennsylvania's adoption of Section 400 of Restatement of Torts, Second. Comment "d" to Section 400 provides in pertinent part:

> "Thus, one puts out a chattel as his own product when he puts it out under his name or affixes to it his trade name or trademark. When such identification is referred to on the label as an indication of the quality or wholesomeness of the chattel, there is an added emphasis that the user can rely upon the reputation of the person so identified. . . ."

Thus, by its authorized label, defendants have stated that "Ban-Lon" is a trademark identifying garments, fabrics and articles made according to specification and quality standards prescribed and controlled [by defendants]. The Court notes that Pennsylvania has adopted Section 400 of the Restatement in the case of Forry v. Gulf Oil Corporation, 428 Pa. 334, 237 A.2d 593 (1968). In Forry v. Gulf Oil Corporation, supra, the Pennsylvania Supreme Court declared that Gulf could be held liable as a manufacturer of a tire which bore Gulf's name, notwithstanding, the fact that B. F. Goodrich had actually manufactured the tire. In a futile endeavor to distinguish the instant case from *Forry*, defendants forcefully maintain that in *Forry*, the real manufacturer was not disclosed and that in the case at bar, the tag identified, at least by inference, Anika as the manufacturer. Defendants further assert that plaintiff knew Anika manufactured the dress. Certainly, the evidence does not establish Anika as the manufacturer of the fabric or the dress; indeed, the jury returned a verdict in favor of Anika. However, even if Anika is considered the manufacturer, defendants would nevertheless remain liable under Section 400 of the Restatement of Torts, Second.

In urging that they should be relieved of liability as a "manufacturer," defendants rely on the following part of Comment "d" to Section 400:

> "However, where the real manufacturer or packer is clearly and accurately identified on the label or other markings on the goods, and it is also clearly stated that another who is also named has nothing to do with the goods except to distribute or sell them, the latter does not put out such goods as his own."

It is obvious that defendants are not relieved of liability by the Comment relied upon because the tag does not clearly state that defendants had nothing to do with the goods except to distribute or sell them. Indeed, defendants clearly state on their label that the article was made according to specifications and quality standards prescribed and controlled by defendants. Thus, under Section 400, supra, the jury could have found defendants to be liable as a manufacturer and manufacturers are deemed sellers under Section 402A.[2]

Defendants next vigorously contend that even if they are deemed a "seller", under Section 402A, the evidence was insufficient to permit the jury to find by a preponderance of the evidence that the product was in a defective condition when sold. As support for this contention, defendants maintain that in a room "having combustible material such as al-

2. It might be appropriate to point out that by providing the specifications and prescribing and controlling the quality standards of the Ban-Lon fabric, defendants were involved in the manufacture of a component, the Ban-Lon fabric, that went into the final product, the dress. In this regard, we note that the Pennsylvania Supreme Court has declared that a manufacturer of a defective component part of a product is liable under Section 402A for an injury to the ultimate user. Burbage v. Boiler Engineering and Supply Co., 433 Pa. 319, 249 A.2d 563, 566 (1969).

cohol, sterno, and Grand Marnier liquor in it, with possible ignition materials as candelabra, a match, or a cigarette lighter present," the evidence could not support a jury finding that the accident was caused by the defective condition of the dress fabric or that the burns were caused by the burning of the dress as distinguished from the flames of the original fire. We are unpersuaded by this contention of defendants who mistakenly view the evidence in the light most favorable to themselves instead of in the light most favorable to plaintiff; who won the verdict. Properly viewed, the evidence is clearly sufficient to support the verdict. The evidence, thus, reveals that plaintiff was in a room with seven other persons, all equally exposed and subjected to a sudden fire that was over so quickly that a witness could not "feel that it had really happened." Only the Ban-Lon fabric worn by plaintiff ignited and burned. Fabrics identified as cotton, linen and flannel did not burn, nor did other unidentified fabrics burn, although all were subjected to the same sudden fire. A witness testified that very vivid multi-colored flames, green, red, yellow and blue engulfed plaintiff from her shoulders to her head. It is true that another guest at the party, Dr. Creatore, suffered burns of the hand, face and hair; however, the witness described the fire around Dr. Creatore's head as an ordinary red type flame. It is clear that Dr. Creatore's clothing did not burn as did Plaintiff's. A witness testified, "Well, there was a hole in the back of his coat, like a scorch mark, but it hadn't burn all the way through." Even if we assume that the coat of Dr. Creatore burned, this is not proof that the Ban-Lon material was not defective; it may only indicate that the fabric in Dr. Creatore's coat was defective also.

■ Solely, from the evidence of lay witnesses, describing the event, the jury could have reasonably and logically concluded that it was more probable than not that the Ban-Lon dress fabric malfunctioned and that it was thus in a defective condition and unreasonably dangerous to plaintiff. The jury could have found by a preponderance of the evidence that the defective condition was a substantial factor in bringing about the accident and resultant injuries to plaintiff, and that the Ban-Lon fabric dress at the time of sale was in a defective condition. Kridler v. Ford Motor, 422 F.2d 1182 (3rd Cir. 1970); LaGorga v. Kroger Company, 275 F.Supp. 373 (W.D.Pa.1967), aff'd 407 F.2d 671 (3rd Cir. 1969); MacDougall v. Ford Motor Co., 214 Pa.Super. 384, 257 A.2d 676 (1969), allocatur denied.

■ In LaGorga v. Kroger, supra, which is a case remarkably similar to the instant case, a jury verdict for plaintiff was sustained on the testimony of lay witnesses describing the event. Defendants attempt to distinguish the instant case from *LaGorga* by submitting that in *LaGorga*, the evidence confirmed that a spark had ignited the jacket and that in the case before us, plaintiff was not able to prove the source of ignition of her dress. We find that the aforementioned distinction is of no consequence or significance in view of the fact that in the instant case, unlike in *LaGorga*, other fabrics subjected to the same environmental factors as the Ban-Lon fabric did not ignite. Thus, the jury could have found and by its verdict did find that the fabric was defective in not being able to withstand the sudden fire described by the witnesses. The law is clearly settled that proof of a specific defect as the cause of the malfunction of a product is not an essential element in establishing liability under Section 402A in Pennsylvania. Kridler v. Ford Motor Co., supra; McCann v. Atlas Supply Company, 325 F.Supp. 701 (W.D.Pa.1971); MacDougall v. Ford Motor Co., supra. Accordingly, in the instant case, plaintiff is not required to establish a particular defect in the fabric as the cause of the malfunction.

■ Defendants lay great stress on the decisions in Eckley v. Seese, 382 Pa. 425, 115 A.2d 227 (1955) and Karcesky v. Laria, 382 Pa. 227, 114 A.2d 150

(1955), as support for their contention that there is insufficient evidence to establish that the "unreasonably dangerous" dress plaintiff was wearing did not cause her injuries. With respect to the evidence required to support plaintiff's claim, defendants invite the Court's attention to the following language in Karcesky v. Laria, supra:

> ". . . the evidence must clearly and sufficiently describe or picture the happening of the accident in such a manner that the only reasonable inference and conclusion from the facts and circumstances which were proved is that defendant was negligent. . . ." 382 Pa. at 232, 114 A.2d at 153.

Defendants' reliance on those two Pennsylvania cases is misplaced. It is clear that Pennsylvania has adopted a far less rigid standard in regard to proof of liability under Section 402A. As the Court of Appeals observed in Kridler v. Ford Motor Co., supra:

> *"The evidence as to causation is meager in both cases and perhaps more so in the present case than in MacDougall. Nonetheless, MacDougall does reflect the Pennsylvania law and under the standards set forth in that case there is a jury question on the issue of causation. Comparing the lay testimony in MacDougall with that in the present case, the jury can make a rational decision as to causation.*
>
> "The Pennsylvania courts favor submission to the jury of the issue of proximate cause of an accident. In fact the Pennsylvania Supreme Court has said that the 'question of proximate cause of an accident is almost always one of fact for the jury.' Anderson v. Bushong Pontiac Co., Inc., 404 Pa. 382, 391, 171 A.2d 771, 775 (1961); Ashby v. Philadelphia Electric Co., 328 Pa. 474, 478, 195 A. 887, 889 (1938).
>
> *"MacDougall makes it clear that the plaintiff in a suit for breach of warranty or strict liability does not have to establish a particular defect as the proximate cause of the accident. The existence of a malfunction alone, according to the Pennsylvania Superior Court, establishes a 'defective condition', and the plaintiff must prove only that the 'malfunction' of the [product] was the proximate cause of the accident. Two other Pennsylvania accident cases lend further support for requiring the present case to go to the jury."* 422 F.2d at 1185. (Emphasis added).

Thus, under Pennsylvania law, the evidence presented was sufficient to permit the jury to find by a preponderance of the evidence that defendants, "sellers", sold a product in a defective condition, unreasonably dangerous to plaintiff; also, that at the time of sale, and of the accident, the product had not been substantially changed, and the defective condition was the proximate cause of the accident and of plaintiff's injury. Accordingly, defendants are not entitled to judgment notwithstanding the verdict.

As noted above, this case was submitted to the jury on three theories of possible liability: strict liability, negligence and breach of warranty. Defendants have not vigorously urged either by way of legal memorandum or argument that they are entitled to judgment notwithstanding the verdict because the evidence would not support the verdict on the theory of negligence or breach of warranty. We note, however, that the Pennsylvania Superior Court in MacDougall v. Ford Motor Company, supra, declared "that the elements of breach of warranty and 402A are identical." 214 Pa.Super. at 388, 257 A.2d at 678. An extensive review of the record indicates also that defendants are not entitled to judgment n. o. v. on either the breach of warranty theory or the negligence theory. In any event, it is clear that "If plaintiff's verdict withstands attack on any one of the three theories, he advances, then any errors committed with regard to the other two become harmless." Dorsey v. Yoder Co., 331 F.Supp. 753, 757 (E.D.Pa.1971), aff'd 474 F.2d 1339 (3rd Cir., 1973).

Therefore, defendants are not entitled to judgment notwithstanding the verdict under Rule 50, Fed.R.Civ.P., and we accordingly deny their motion.

II

*Plaintiff's Motion for a New Trial Limited to Damages*

The major thrust of plaintiff's motion relates to the inability of plaintiff to have Dr. Peter Coggins testify before the jury or to have the deposition testimony of Dr. Coggins presented to the jury. According to plaintiff's counsel, Dr. Coggins, a plastic surgeon, was the medical witness who plaintiff relied upon to establish the hospital and surgical treatment, the medical nature of plaintiff's burns and disfigurement, and the plastic surgery required. On Thursday, February 10, 1972, at or about 3:00 P.M., the Court inquired of plaintiff's counsel whether he was ready to proceed with another witness. Counsel advised the Court that Dr. Coggins was not then available as he had been delayed in traffic between his office in Wilmington, Delaware, and the courthouse. Counsel asked the judge to recess court until Dr. Coggins arrived. The Court inquired of counsel if he had any other witnesses to call and counsel replied he was awaiting the arrival of Dr. Coggins who was on his way from Delaware and of a Dr. Parrish who was flying in from Denver. Judge Wood then advised counsel that he would adjourn until Friday morning 10:00 o'clock at which time he would hear both witnesses. Plaintiff's counsel insisted that Dr. Coggins could not be available on Friday morning because he was scheduled to address a medical meeting in Florida on Friday morning. Judge Wood indicated to counsel that he had been involved with this case since 9:00 o'clock in the morning, and that even if Dr. Coggins were available, he did not believe that direct and cross-examination could be concluded in less than an hour or by 4:00 o'clock P.M. The Judge warned that he intended to adjourn at 4:00 o'clock P.M. as he was

not "going to jeopardize [his] health to suit your Dr. Coggins."

Plaintiff's counsel having failed to gain a recess until later Thursday afternoon, then made a motion to take Dr. Coggins' deposition on Thursday afternoon when Dr. Coggins arrived, so that the transcript of the deposition could be read to the jury on Friday morning. The Court advised counsel that the motion would be denied unless defense counsel consented, and absent that consent the Court denied the motion. Notwithstanding the fact that the Court had denied plaintiff's motion to take the deposition of Dr. Coggins, defense counsel, after rearranging his schedule, agreed with plaintiff's counsel to take the deposition of Dr. Coggins on Thursday afternoon following court. The deposition was taken by an official court stenographer and lasted for at least two hours. Plaintiff's counsel expected that the stenographer would have the deposition transcribed so that it could be read to the jury on Friday morning. However, even though the stenographer and his typist worked until early Friday morning, the transcribing of the deposition had not been completed when court reconvened. Plaintiff's counsel then moved to use a "verbatim electronic tape transcript," which plaintiff's counsel had made of the deposition. Defendant's counsel objected that he had not had time to review the electronic transcript and that he could not be certain it was accurate without reading the official transcript. The court denied plaintiff's motion to use the electronic tape transcript. Plaintiff then moved to have the Court hold the case over until Monday, February 14, so that the typed official transcript could be read to the jury; this motion also was denied.

■ We have carefully reviewed all of the rulings of the Court in regard to Dr. Coggins' testimony and find that the rulings were proper and were within the discretion of the trial judge. We find no abuse of discretion in the trial judge's rulings and note that it was not the judge's rulings which prevented Dr.

Coggins' testimony but the action of plaintiff's counsel or Dr. Coggins in attempting to require the Court to accommodate its schedule to suit the convenience of Dr. Coggins. In regard to the use of the electronic tape transcript, Rule 30(b)(4) of the Federal Rules of Civil Procedure makes it entirely discretionary with the trial judge whether to authorize the electronic recording of depositions. Accordingly, there was no error in refusing use of the unauthorized recording.

Plaintiff also complains that defense counsel was permitted to make the following remark in his closing address to the jury:

> "Now, you heard, Dr. Theodore Coggins was a plastic surgeon and you didn't hear Dr. Coggins. You heard that he was going to testify as to what affect this fabric had on her skin. You didn't hear him. We have been on trial since Monday, members of the jury. He told you in his liability case he was going to present him then. He didn't. He told you again he was going to do it in the damage case. He did not."

A reading of the transcript reveals that plaintiff's counsel did not immediately object to the statement by defense counsel. Nor does it appear that he expressly requested and was denied an opportunity to explain to the jury the reason for Dr. Coggins nonappearance. Plaintiff now vigorously urges that the statement was a suggestion to the jury that if Dr. Coggins had been called, his testimony would have been adverse to plaintiff. It is unfortunate that defense counsel made the statement but we believe that when read in the context of the total closing statement of counsel it was not more than a reminder to the jury that statements by plaintiff's counsel concerning the scope of Dr. Coggins' expected testimony had been made but that Dr. Coggins had not in fact testified. It is clear that statements made by counsel are not evidence and are not to be considered as evidence by the jury. We do not find that the statement was error, but even if error, it was harmless error and does not entitle plaintiff to a new trial.

Plaintiff assigns as error numerous other rulings by the trial judge. We have considered all the assignments of error and do not find that the trial judge's rulings were erroneous when considered in the context of the case. One class of error assigned is that the trial judge seriously restricted plaintiff in its proof of damages. It is important to note in regard to this assignment of error that a pretrial conference was held on November 10, 1971, at which time the case was specially listed for trial on Monday, February 7, 1972. Plaintiff had filed its pretrial memorandum under Local Rule 7 on February 17, 1971; however, defendants' counsel contends that he did not receive a copy of said pretrial memorandum until February 3, 1972. Plaintiff's counsel does not insist that he in fact provided defendant's counsel with a copy of the pretrial memorandum, only that if defendant's counsel had been diligent, he could have determined that a pretrial memorandum had been filed on February 17, 1971, and could have secured a copy from the court or from counsel. There is other evidence that plaintiff did not promptly disclose the extent of her damages. On February 1, 1972, plaintiff's counsel for the first time filed a supplemental pretrial memorandum and on February 4, 1972, for the first time filed supplemental answers to interrogatories, both of which documents substantially enlarged the damages claimed by plaintiff. The trial court properly found that counsel had not timely filed the supplemental pretrial memorandum and had not with reasonable promptness filed supplemental answers in regard to the interrogatories as required by Local Rule 25(f). Viewed in this context, the restrictions placed on plaintiff in regard to the proof of damages were not unreasonable and did not constitute error.

We have considered all of the other alleged errors assigned by counsel for

plaintiff in regard to the damages part of the suit and find them without merit and not to have affected the substantial rights of plaintiff. Rule 61, Fed.R.Civ. P.

For the foregoing reasons, we deny plaintiff's motion for a new trial limited to damages.