J-A20041-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AMY R. SMITH, Executrix of the Estate of Paul A. Rowland, Deceased, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| BMW OF NORTH AMERICA LLC, INDIVIDUALLY AND OWNER OF AND/OR PARENT OF AND/OR SUCCESSOR TO AND/OR F/K/A MINI, BORG-WARNER CORPORATION, INDIVIDUALLY AND SUBSIDIARY OF AND/OR PARENT OF AND/OR A/K/A AND/OR F/K/A BORG & BECK, FORD MOTOR COMPANY, GENUINE PARTS COMPANY, HONEYWELL INTERNATIONAL, INC., AS SUCCESSOR-IN-INTEREST OF ALLIED SIGNAL, INC., SUCCESSOR TO BENDIX CORPORATION AND BENDIX MINTEX PTY, LTD., JAGUAR LAND ROVER NORTH AMERICA, LLC, INDIVIDUALLY AND ITS PREDECESSORS, SUCCESSORS, PRESENT AND/OR FORMER PARENTS, SUBSIDIARIES AND/OR DIVISIONS, NISSAN NORTH AMERICA, INC., THE PEP BOYS – MANNY, MOE & JACK, PNEUMO ABEX, LLC, SUCCESSOR-IN-INTEREST TO ABEX CORPORATION AND QUAKER CITY MOTOR PARTS COMPANY, | : : : : : : : : : : : : : : : : : : : : : : : : : : : | |
| | : | |
| Appellees | : | No. 3352 EDA 2013 |

Appeal from the Orders entered on October 21 and 22, 2013
in the Court of Common Pleas of Philadelphia County,
Civil Division, No. 01814 September Term 2011

BEFORE: FORD ELLIOTT, P.J.E., MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED AUGUST 27, 2014**

Amy R. Smith, Executrix of the Estate of Paul A. Rowland, Deceased (hereinafter "Rowland"), appeals from the Orders granting summary judgment in favor of Ford Motor Company ("Ford") and Borg-Warner Corporation ("Borg-Warner").[1]  We affirm.

The trial court set forth the relevant factual and procedural history in its Opinion, which we adopt herein by reference.  *See* Trial Court Opinion, 1/24/14, at 1-4.

Following the trial court's entry of summary judgment in favor of Ford and Borg-Warner, Rowland filed a timely Notice of Appeal.[2]

On appeal, Rowland raises the following questions for our review:

1. Did the [t]rial [c]ourt err in granting summary judgment in favor of Ford [] with respect to its liability as the apparent manufacturer of the asbestos-containing "genuine" Ford FOMOCO (*i.e.*, Ford []) brand brakes and clutches at issue in this case and decedent [] Rowland's exposures to asbestos

---

[1] On October 21, 2013, the trial court entered an Order, dated October 17, 2013, granting Ford's Motion for Summary Judgment Based on No Liability of Ford Motor Company, Ltd. ("Ford/Britain"), as well as an Order, dated October 18, 2013, granting Ford's Motion for Summary Judgment based on *Eckenrod v. GAF Corp.*, 544 A.2d 50 (Pa. Super. 1988), and *Gregg v. V-J Auto Parts*, 943 A.2d 216 (Pa. 2007).  On October 22, 2013, the trial court entered an Order, dated October 17, 2013, granting Borg-Warner's Motion for Summary Judgment Based on No Liability of Borg & Beck, Company, Limited ("Borg & Beck/Britain").  We have corrected the caption to reflect the proper entry dates for these Orders.

[2] In this multi-defendant lawsuit, the trial court's interlocutory Orders granting summary judgment in favor of Ford and Borg-Warner did not become final and appealable until October 30, 2013, when the trial court disposed of Rowland's remaining claims against other defendants and entered a notation on the docket indicating that the case was closed.  Thus, despite Rowland's appeal from interlocutory Orders, we will address the appeal.

from such "Ford" products where: (a) these asbestos-containing products were sold under the "Ford" name and trademark by a wholly[-]owned subsidiary of Ford, whose actions were dominated and controlled by Ford; (b) reasonable end-users of such products would have believed that such products were manufactured by, or under the control of, Ford and, accordingly, relied on Ford's reputation as an assurance of the quality of the products; (c) Ford allowed – and, indeed, required – the products to be labeled with the "Ford" name and trademark in a way that readily identified Ford, as opposed to its wholly[-]owned subsidiary, as the "manufacturer" of the products at issue; and (d) Ford had significant involvement in and exercised significant control over, the manufacture of such products?

2. Did the [t]rial [c]ourt err in granting summary judgment in favor of Borg-Warner [] with respect to its liability as the apparent manufacturer of the asbestos-containing "Borg & Beck" brand vehicle clutches at issue in this case[,] and decedent [] Rowland's exposures to asbestos from such "Borg & Beck" products[,] where: (a) these asbestos-containing products were sold under Borg-Warner's "Borg & Beck" trademark by Borg-Warner's trademark licensee; (b) reasonable end-users of such products would have believed that such products were manufactured by, or under the control of, Borg-Warner and, accordingly, relied on Borg-Warner's reputation as an assurance of the quality of the products; (c) Borg-Warner allowed the products to be labeled with the "Borg & Beck" name; and (d) Borg-Warner had significant involvement in and exercised significant control over, the manufacture of such products?

3. Did the [t]rial [c]ourt err in granting summary judgment in favor of Ford with respect to its liability as the "alter ego" of its wholly[-]owned subsidiary and decedent [] Rowland's exposures to asbestos from the "Ford" brand vehicles and genuine "Ford" brand brakes and clutches at issue here where: (a) these asbestos-containing products were sold under the "Ford" name and trademark by a wholly[-]owned subsidiary of Ford, whose actions were dominated and controlled by Ford; and (b) Ford's dominance of and control over its wholly[-]owned subsidiary was such that the wholly[-]owned subsidiary operated as a mere department – and the alter ego – of Ford []?

Brief for Appellant at 2-4.

> Under our standard of review of an order granting … a motion for summary judgment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Summary judgment is properly entered only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Our scope of review is plenary, and our review of a question of law … is *de novo*.

**Barnett v. SKF USA, Inc**., 38 A.3d 770, 776 (Pa. 2012) (internal citation omitted).

Initially, Rowland contends that the trial court erred by ignoring evidence that Rowland's father, an automobile mechanic in Great Britain, used Ford asbestos-containing brakes and clutches, dressed in Ford packaging, thereby misapprehending Ford's liability for holding out these products as Ford's products. Brief for Appellant at 14, 15. Rowland asserts that it is of no import that Ford did not manufacture or supply these products because Ford authorized and permitted its name and trademark (*i.e.*, FOMOCO) to be displayed on the products, thereby causing product users to use the products in reliance upon Ford's reputation. *Id*. at 18. Rowland further contends that Ford implemented a world-wide FOMOCO trademark program, which specified the use of the term "genuine parts," and prohibited any indication of the company or country of origin, such that product users would not know that a particular part had been manufactured by Ford/Britain rather than by Ford. *Id*. at 19, 24. Additionally, Rowland

asserts that Ford retained the exclusive right to control the quality of any product on which the FOMOCO or Ford trademarks were used, and controlled the warnings placed on all FOMOCO products sold, including those manufactured and sold by Ford/Britain. *Id*. at 22. Based on this evidence, Rowland contends that the trial court erred by finding that Ford had little control over the brakes and clutches manufactured by Ford/Britain, the "Ford" brand was not synonymous with Ford to product users in Great Britain, and that Ford was not the apparent manufacturer of Ford/Britain's products. *Id*. at 25-26.

The trial court set forth the relevant law and addressed Rowland's first claim in its Opinion. *See* Trial Court Opinion, 1/24/14, at 7-10. We agree with the reasoning of the trial court and adopt its holding with regard to this issue. *See id*.

In the second claim, Rowland contends that the trial court erred by misapprehending Borg-Warner's liability for holding out Borg & Beck brand asbestos-containing clutches as Borg-Warner products. Brief for Appellant at 26. Rowland contends that disputed issues of material fact existed as to Borg-Warner's liability as the apparent manufacturer of clutches manufactured by Borg & Beck/Britain. *Id*. at 26-27. Rowland asserts that it is of no import that Borg-Warner did not manufacture or supply the clutches because it authorized and permitted its Borg & Beck trademark to be

displayed on the clutches, thereby causing product users to use the clutches in reliance upon Borg-Warner's reputation. *Id*. at 27.

Additionally, Rowland claims, Borg & Beck/Britain manufactured clutches using Borg-Warner's technology, specifications and methods of manufacture. *Id*. at 30-31. Further, Rowland contends, Borg-Warner retained the right to test and inspect the clutches to ensure that Borg & Beck/Britain maintained Borg-Warner's standard of quality. *Id*. at 30, 32. Rowland claims that the evidence presented established either that Borg-Warner was the apparent manufacturer of the clutches, or that disputed issues of material fact exist as to its liability as the apparent manufacturer of the clutches. *Id*. at 33.

The trial court set forth the relevant law and addressed Rowland's second claim in its Opinion. *See* Trial Court Opinion, 1/24/14, at 7-10. We agree with the reasoning of the trial court and adopt its holding with regard to this issue. *See id*.

In the third claim, Rowland contends that Ford's level of control over Ford/Britain was widespread and pervasive, and that Ford/Britain is simply an instrumentality and arm of Ford. Brief for Appellant, at 34, 35. Rowland claims that Ford dominated and controlled all aspects of Ford/Britain's corporate activities, such that its separate corporate existence was meaningless. *Id*. at 42, 45. Rowland asserts that the trial court misinterpreted the evidence and, therefore, misconstrued the relationship

between Ford and Ford/Britain. *Id*. at 44, 45. Rowland contends that the record evidence was more than sufficient to support a finding that Ford/Britain was the alter ego of Ford or, at a minimum, to raise issues of material fact regarding this issue. *Id*. at 46, 48.

The trial court set forth the relevant law and addressed Rowland's third claim in its Opinion. *See* Trial Court Opinion, 1/24/14, at 5-6. We agree with the reasoning of the trial court and adopt its holding with regard to this issue. *See id*.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/2014

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

CIVIL TRIAL DIVISION

| | |
|---|---|
| AMY SMITH, Executrix of the Estate of Paul Rowland,<br>*Plaintiff*<br><br>v.<br><br>FORD MOTOR COMPANY, et al.,<br>*Defendants* | September Term, 2011<br>No. 1814<br><br><br>Superior Court Docket No.<br>3352 EDA 2013 |

OPINION

New, J.

January 24, 2014

Plaintiff, Amy R. Smith, Executrix of the Estate of Paul Rowland ("Mr. Rowland"), appeals the October 17, 2013 Orders granting summary judgment in favor of Defendant Ford Motor Company and the October 18, 2013 Order granting summary judgment in favor of Defendant Borg Warner Corporation ("Borg Warner"). The Orders should be affirmed because Plaintiff has not established Mr. Rowland's exposure to products attributable to Defendant Ford Motor Company or Defendant Borg Warner.

I.     BACKGROUND

Mr. Rowland commenced this action on his own behalf in September 2011, claiming he developed mesothelioma as a result of inhaling asbestos-containing dust from automotive parts. In his Short-Form Complaint, Mr. Rowland averred Defendant Ford Motor Company and

Rowland Vs Bmw Of North America, Llc, Etal-OPFLD



11090181400204

1

Defendant Borg Warner each "directly or indirectly" manufactured, produced, sold, or supplied some of the automotive parts at issue.[1]

The overwhelming majority of Mr. Rowland's alleged exposure to automotive parts occurred throughout his childhood and young adulthood in England, from approximately 1967 to 1983.[2] During that timeframe, Mr. Rowland lived in his parents' Uttoxeter, England home while his father was employed as an auto mechanic at a garage.[3] Mr. Rowland testified to inhaling dust when he visited his father's garage and when he came in contact with his father's person and clothing at home.[4] Mr. Rowland's father testified to using "Borg & Beck" brand clutches and "Ford" brand brakes and clutches at the garage.[5]

It is undisputed the "Borg & Beck" clutches were manufactured and supplied by the English company Borg & Beck, Ltd. ("Borg & Beck Britain"). The record reflects the "Borg & Beck" name originated with an American company called Borg & Beck ("Borg & Beck US").[6] However, as of June 1, 1965, Defendant Borg Warner and Borg Warner International had exclusive rights to manufacture and supply "Borg & Beck" clutches in the United States, and Automotive Products and Borg & Beck Britain had exclusive rights to manufacture and supply "Borg & Beck" clutches in the United Kingdom.[7]

---

[1] Pl.'s Short-Form Compl. at ¶¶ 3, 4.
[2] Pl.'s Short-Form Compl. at ¶ 14; Ex. A to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. Based on No Liability for Ford of Britain ("Ford Motor Company's Mot. for Sum. J. I"), 53-54.
[3] Pl.'s Short-Form Compl. at ¶ 14; Ex. A to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. I at 53-54.
[4] Ex. A to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. I at 55-65, 68-71; Ex. D to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. I at 129-133.
[5] Ex. C to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. I at 31-32, 45, 67, 109-110.
[6] Ex. J to Pl.'s Ans. to Borg Warner's Mot. for Sum. J., p. 1-2.
[7] Ex. L to Pl.'s Ans. to Borg Warner's Mot. for Sum. J., Nos. 5, 6.

2

Additionally, it is undisputed the "Ford" brakes and clutches Mr. Rowland's father used in England were manufactured and supplied by Ford Motor Company's wholly owned subsidiary, Ford Motor Company Limited ("Ford of Britain").[8]

In addition to Mr. Rowland's extensive alleged exposure in England, he was also allegedly exposed to one set of brakes manufactured and/or supplied by Ford Motor Company while he was living in the United States.[9] Mr. Rowland moved to Maryland in 1988 and purchased a Ford Mustang in approximately 1990.[10] When Mr. Rowland noticed a problem with the Mustang's original Ford Motor Company brakes, he inspected the brakes one time.[11] Shortly thereafter, Mr. Rowland stood by while his father inspected the Ford Motor Company brakes and replaced them with brakes from Pep Boys.[12]

Based on this record of the facts, Defendants Ford Motor Company and Borg Warner filed Motions for Summary Judgment on September 20, 2013. Plaintiff filed Answers on October 7, 2013. The parties also filed several Replies and Sur-Replies.

In its first Motion, Defendant Ford Motor Company argued Plaintiff had improperly sued it based on "Ford" parts manufactured and supplied by Ford of Britain, a totally separate corporation. In response, Plaintiff sought to pierce the corporate veil, arguing Defendant Ford Motor Company was liable for the Ford of Britain parts because Ford of Britain was Defendant

---

[8] Ford Motor Company acknowledges Ford of Britain was a wholly owned subsidiary of Blue Oval Holdings, which was a wholly owned subsidiary of Ford International Capital LLC, which was a wholly owned subsidiary of Ford Motor Company.

[9] Pl.'s Short-Form Compl. at ¶ 14; Ex. A to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. Based on Eckenrod and Gregg ("Ford Motor Company's Mot. for Sum. J. II"), 25, 36, 103-04; Ex. D to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. II at 37.

[10] Ex. A to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. II at 25, 103-04; Ex. D to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. II at 29.

[11] Ex. A to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. II at 105-09; Ex. D to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. II at 29-33, 37.

[12] Ex. A to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. II at 105-09 (reflecting Mr. Rowland's father showed him how to clean the Ford Motor Company brakes, and Mr. Rowland sat on the wheel while his father replaced the Ford Motor Company brakes); Ex. C to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. II at 125-26 (reflecting Mr. Rowland's father examined the Ford Motor Company brakes, and Mr. Rowland helped him); Ex. D to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. II at 29-33, 37.

3

Ford Motor Company's "alter ego." In addition, Plaintiff argued Defendant Ford Motor Company was liable as the "apparent manufacturer" of the "Ford" parts manufactured and sold by Ford of Britain, under § 400 of the Restatement (Second) of Torts.

Defendant Borg Warner similarly claimed it was entitled to summary judgment because the "Borg & Beck" clutches used by Mr. Rowland's father were attributable to Borg & Beck Britain, a distinct corporation. Although Plaintiff conceded the "Borg & Beck" clutches were manufactured and sold by Borg & Beck Britain, Plaintiff argued Defendant Borg Warner was liable as the "apparent manufacturer" of said clutches, under § 400 of the Restatement (Second) of Torts.

In a second Motion, Defendant Ford Motor Company argued Mr. Rowland's exposure to Ford Motor Company brakes in the United States was *de minimus* as a matter of law. In response, Plaintiff argued there was sufficient evidence of Mr. Rowland's exposure to dust from the Ford Motor Company brakes on his Ford Mustang.

Upon consideration of the foregoing arguments, this Court granted Defendant Ford Motor Company and Defendant Borg Warner's Motions by Orders dated October 17 and 18, 2013.

## II.     DISCUSSION

In Pennsylvania, strict liability asbestos claims generally proceed against the manufacturer or supplier of the asbestos-containing product at issue. See, Restatement (Second) of Torts § 402A (1965);[13] Eckenrod v. GAF Corp., 375 Pa. Super. 187, 190-91 (1988);[14] Kolar v. Buffalo Pumps Inc., 15 Pa. D. & C. 5th 38, 45-46 (Pa. C.P. 2010).[15]

---

[13] Section 402A provides for the strict liability of "sellers," including manufacturers or distributors. Id.

[14] "In order for liability to attach in a products liability action, plaintiff must establish that the injuries were caused by a product of the particular *manufacturer or supplier.*" Id. (*emphasis added*).

[15] A manufacturer may also be liable for asbestos parts installed onto its products if the manufacturer's products require the asbestos parts to function properly and/or the manufacturer "calls for the use" of ("specifies") the asbestos parts. Id.

4

Nonetheless, in this case, Plaintiff sued Defendants Ford Motor Company and Borg Warner based on automotive parts they did not manufacture or supply. Conversely, Plaintiff did not sue Ford of Britain or Borg & Beck Britain, the undisputed manufacturers and/or suppliers of the "Ford" and "Borg & Beck" parts at issue. Essentially, once the statutory limitations period had expired, Plaintiff creatively attempted to collect damages from Ford Motor Company and Borg Warner, the only named Defendants with any connection to Ford of Britain and Borg & Beck Britain. Plaintiff's efforts were unavailing.

To the extent Plaintiff sued Defendant Ford Motor Company based on products it did manufacture or supply, Ford Motor Company is nonetheless entitled to summary judgment pursuant to Eckenrod, 375 Pa. Super. 187.

### B.    Piercing the Corporate Veil

Plaintiff has not made out a case for piercing Ford of Britain's corporate veil.

In rare cases, a plaintiff may pierce the corporate veil to pursue a parent company for its subsidiary's liabilities. See, Kiehl v. Action Mfg. Co., 517 Pa. 183, 190 (1987). There is a strong presumption against piercing in Pennsylvania. Lumax Industries, Inc. v. Aultman, 543 Pa. 38 (1995).

Piercing is permissible under the "alter ego" theory only if the parent exercised such domination and control over the subsidiary that the subsidiary was a mere alter ego of the parent, with no separate existence. Botwinick v. Credit Exch., Inc., 419 Pa. 65, 72 (1965); Allegheny Energy Supply Co., LLC v. Wolf Run Min. Co., 2012 Pa. Super 163 (2012). A case for piercing is not made out by merely showing the parent owned the subsidiary, the parent exercised some control over the subsidiary, and/or the parent and the subsidiary had similar names. Botwinick, 419 Pa. 65, 72; see, Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001); E-

5

Time Sys., Inc. v. Voicestream Wireless Corp., 2002 WL 1917697, 11-12 (E.D. Pa. Aug. 19, 2002). There must be evidence the subsidiary was undercapitalized, the entities did not adhere to corporate formalities, or the entities intermingled their affairs or their funds. Lumax, 543 Pa. 38; see, Allegheny Energy Supply Co., LLC, 2012 Pa. Super 163; E-Time Sys., Inc., 2002 WL 1917697, 11-12.

Here, Plaintiff has not demonstrated an abuse of the corporate form which would persuade this Court to pierce Ford of Britain's corporate veil. Defendant Ford Motor Company avers Ford of Britain is and has been a fully operational company with plants and research and development centers throughout the United Kingdom. Defendant Ford Motor Company also avers Ford of Britain manufactured and supplied automobiles and replacement parts in England during the relevant time period of 1967 to 1983. Moreover, Defendant Ford Motor Company avers Ford of Britain is and has been a fully funded and viable company which maintains separate and independent books, records, financial statements, and bank accounts.

Plaintiff does not refute these averments. Instead, Plaintiff argues Defendant Ford Motor Company has guaranteed Ford of Britain's obligations and debts and presently includes Ford of Britain's financial data in its annual reports. Further, Plaintiff argues Defendant Ford Motor Company "dominated and controlled" Ford of Britain by requiring approval of its officers and directors, supervising its operations and product lines, and approving certain aspects of its day-to-day business activities, *inter alia*. Plaintiff essentially seeks to hold Defendant Ford Motor Company liable based on its normal parent-subsidiary relationship with Ford of Britain.

Plaintiff has not demonstrated the level of domination and control necessary to pierce the corporate veil.

**B.     Restatement (Second) of Torts § 400**

This Court also rejects Plaintiff's argument that Defendants Ford Motor Company and Borg Warner are liable as the "apparent manufacturers" of the Ford of Britain and Borg & Beck automotive parts at issue.

Section 400 of the Restatement (Second) of Torts, which has been adopted by Pennsylvania, provides, "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." Restatement (Second) of Torts § 400 (1965); Forry v. Gulf Oil Corp., 428 Pa. 334 (1968). Stated differently, a defendant may be liable as the "apparent manufacturer" of a product it does not actually manufacture but nonetheless "puts out as his own." Id.

To determine when a defendant "puts [a product] out as his own" within the meaning of § 400, Pennsylvania courts have relied on comment d to the rule, which provides:

> *The actor puts out a chattel as his own product in two types of cases. The first is where the actor appears to be the manufacturer of the chattel. The second is where the chattel appears to have been made particularly for the actor. In the first type of case the actor frequently causes the chattel to be used in reliance upon his care in making it; in the second, he frequently causes the chattel to be used in reliance upon a belief that he has required it to be made properly for him and that the actor's reputation is an assurance to the user of the quality of the product... Thus, one puts out a chattel as his own product when he puts it out under his name or affixes to it his trade name or trademark...*

Restatement (Second) of Torts § 400, cmt. d; see, Forry, 428 Pa. 334 at 343-44; Brandimarti v. Caterpillar Tractor Co., 364 Pa. Super. 26, 36-37 (1987).

The courts have focused on whether a user would likely interpret the defendant manufactured the product and, accordingly, rely on the defendant's reputation as an assurance of the product's quality. Forry, 428 Pa. 334 at 343-44; Brandimarti, 364 Pa. Super. 26 at 36-37; see, Carter v. Joseph Bancroft & Sons Co., 360 F. Supp. 1103, 1105-10 (E.D. Pa. 1973). For example, the Forry Court held a defendant tire distributor, Gulf Tire, was the apparent

7

manufacturer of a tire which it purchased from the manufacturer, embossed with the Gulf Tire name, and sold to the retailer. Id. at 335, 344.

Additionally, the Brandimarti Court held that Caterpillar was the apparent manufacturer of a forklift which was manufactured by its subsidiary, Towmotor, but which Caterpillar allowed to display the Caterpillar name. 364 Pa. Super. 26 at 35-37. Caterpillar could reasonably expect users to purchase the forklift in reliance on the skill and reputation associated with the Caterpillar name. Id. at 36.

Similarly, in Carter, the court held the defendants were the apparent manufacturers of a dress which was labeled with the defendants' names and their "BAN-LON" trademark, as well as a statement the dress was made according to the defendants' standards. 360 F. Supp. 1103 at 1105-10. The label was an assurance to consumers. Id. at 1107.

In the same vein, in Burch, the fact Sears sold an electric power mower under its own brand name, "Craftsman," weighed in favor of holding Sears liable although it was not the manufacturer of the mower. Burch v. Sears, Roebuck & Co., 320 Pa.Super. 444, 460 (1983).[16]

In each of the foregoing cases, the defendant labeled the product, or allowed the product to be labeled, with a name or trademark which readily identified the defendant as opposed to the actual manufacturer. See, Forry, 428 Pa. 334; Brandimarti, 364 Pa. Super. 26; Carter, 360 F. Supp. 1103; Burch, 320 Pa. Super. 444 at 460. As a result, users were likely to perceive the defendant manufactured the product and, in turn, rely on the defendant's reputation. See, Forry, 428 Pa. 334; Brandimarti, 364 Pa. Super. 26; Carter, 360 F. Supp. 1103; Burch, 320 Pa. Super. 444 at 460.

Despite the general emphasis on the user's perception, the defendant's degree of control over the product is significant. The plain language of § 400 suggests an apparent manufacturer is

---

[16] The Court noted "the act of placing one's name on a product is a factor in assessing responsibility," but ultimately affirmed the jury's award of indemnity to Sears. Id.

8

generally the seller or supplier of the product at issue. Restatement (Second) of Torts § 400;[17] Pridgen v. Parker Hannifin, Corp., 591 Pa. 305, 310 (2007).[18] Moreover, the apparent manufacturer in the seminal case of Forry was a supplier of the product at issue. Forry, 428 Pa. 334. Still, a non-seller, non-supplier defendant may be an apparent manufacturer if the defendant is "sufficiently involved in the manufacturing process" or otherwise exercises control over the product. See, Carter, 360 F. Supp. 1103 at 1106-07; Brandimarti, 364 Pa. Super. 26 at 36.[19] This keeps with Pennsylvania's policy of imposing liability upon those in the best position to prevent product defects and spread costs. See, Burch, 320 Pa. Super. 444 at 456.

In this case, there is an insufficient basis for holding Defendants Ford Motor Company and Borg Warner liable for the automotive parts Mr. Rowland's father used in England. Ford Motor Company and Borg Warner had little to no control over the "Ford" and "Borg & Beck" parts, and there is no indication those parts were "put out" as Ford Motor Company and Borg Warner's. The "Ford" and "Borg & Beck" parts were undisputedly manufactured and/or supplied by Ford of Britain and Borg & Beck Britain. Ford of Britain was a fully-functioning, separate entity from Ford Motor Company. The "Ford" name was not synonymous with Ford Motor Company, an American corporation. Likewise, Borg & Beck Britain was its own corporation. The "Borg & Beck" trademark was shared between Borg & Beck Britain and Borg Warner.[20] The "Borg & Beck" name was not synonymous with Borg Warner, an American corporation. Whereas Gulf Tire was likely to be perceived as the manufacturer of the tire

---

[17] The rule is clearly titled, "*Selling* as Own Product Chattel Made by Another." Restatement (Second) of Torts § 400. Moreover, the commentary states it applies to "anyone who *supplies* [the product] to others for their own use or for the use of third persons, *either by sale or lease or by gift or loan.*" Restatement (Second) of Torts § 400, cmt. a. (*emphasis added*).

[18] The Supreme Court of Pennsylvania noted § 400 "by its terms" applies to "one who *supplies* another's product." Id. (*emphasis added*).

[19] The Brandimarti Court emphasized that "although Caterpillar did not manufacture the product at issue and was not a supplier of the product participating in the chain of distribution, it did permit its name to appear on the equipment." Id.

[20] Ex. L to Pl.'s Ans. to Borg Warner's Mot. for Sum. J., Nos. 5, 6.

embossed with the Gulf Tire name in Forry, and Caterpillar was likely to be perceived as the manufacturer of the forklift bearing the Caterpillar name in Brandimarti, there is no indication a English user of the Ford of Britain and Borg & Beck parts would have thought those parts were manufactured by Defendants Ford Motor Company and Borg Warner.

Accordingly, Ford Motor Company and Borg Warner were not apparent manufacturers under § 400.

### C. Exposure to Ford Motor Company Brakes in Maryland

Finally, Mr. Rowland's exposure to the Ford Motor Company brakes on his Ford Mustang was *de minimus* as a matter of law.

A plaintiff in an asbestos action is generally required to show the decedent was proximately, frequently, and regularly exposed to the defendant's asbestos-containing product. Eckenrod, 375 Pa. Super. 187 at 192; Gregg v. V-J Auto Parts, Co., 596 Pa. 274, 289-90 (2007). The frequency and regularity prongs become "somewhat less cumbersome" in cases involving mesothelioma, which can develop after only minor exposures to asbestos fibers. Id. at 289-90. Nonetheless, the decedent's exposure to the defendant's product must be more than *de minimus*. Id.

Here, Mr. Rowland was exposed to a minimal amount of dust from one set of Ford Motor Company brakes. The only Ford Motor Company brakes with which Mr. Rowland had any direct contact were those installed on his Ford Mustang when he purchased it.[21] Mr. Rowland could only have inhaled dust from said Ford Motor Company brakes on a maximum of three (3) occasions: when he inspected them himself, when his father inspected them, and when his father

---

[21] Ex. A to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. II at 106-07; Ex. D to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. II at 29-33, 34-37. (To the extent Mr. Rowland was exposed to replacement brakes applied to his Ford Mustang, those brakes were from Pep Boys, not Ford Motor Company. Ex. A to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. II at 107-114.)

10

removed them.[22] Mr. Rowland's testimony reflects he may have been exposed to some dust during the mere minutes he spent inspecting the Ford Motor Company brakes on his own.[23] He may have also inhaled some dust when his father inspected and removed the Ford Motor Company brakes in his presence.[24]

Mr. Rowland's foregoing exposure to one set of Ford Motor Company brakes is *de minimus* compared to his alternative sources of his exposure. Plaintiff describes at length Mr. Rowland's proximate, frequent, and regular exposure to asbestos-containing dust in England during the 1967 to 1986 timeframe. Plaintiff goes so far as to aver Mr. Rowland "was exposed to asbestos through daily direct physical contact with his father and his father's work clothes, and from regular after-school visits to his father's workplace – where he was directly exposed to asbestos-laden dust."[25]

Wherefore, this Court found Mr. Rowland's exposure to dust from one set of Ford Motor Company brakes to be *de minimus* as a matter of law.

---

[22] Ex. A to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. II at 106-09; Ex. D to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. II at 29-33, 34-37.

[23] Mr. Rowland testified dust was generally produced in the course of inspecting brakes, which involved cleaning them with sandpaper. Ex. D to Pl.'s Ans. to Ford Motor Company's Mot. for Sum. J. II at 32-33. He spent a total of less than ten (10) minutes inspecting and cleaning the Ford Motor Company brakes at issue (though it took an additional two (2) hours to remove the wheels and brake drums). Id. at 30-32.

[24] The record reflects dust was generally created in the course of inspecting and replacing brakes, and Mr. Rowland was nearby while his father inspected and replaced the Ford Motor Company brakes at issue. Id.; see note 12, supra.

[25] Pl.'s Ans. at p. 2.

11